No. 24-2179

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

## MARY ANN ARNOLD,

Plaintiff-Appellant,

v.

## UNITED AIRLINES, INC.,

Defendant-Appellee.

---

On Appeal from the United States District Court
for the Northern District of Illinois
Case No. 1:22-cv-00405
The Honorable Judge Charles P. Kocoras

---

## BRIEF OF THE DEFENDANT-APPELLEE
## UNITED AIRLINES, INC.

---

Alan S. King (ARDC #06198223)
Noreen Cull (ARDC #06229417)
Riley Safer Holmes & Cancila LLP
1 S. Dearborn Street, Suite 2200
Chicago, IL 60603
Telephone:   312.471.8700
Facsimile:   312.471.8701

*Counsel for Defendant-Appellee*
*United Airlines, Inc.*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2179

Short Caption: Mary Ann Arnold v. United Airlines, Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
United Airlines, Inc.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Riley Safer Holmes & Cancila LLP

(3)     If the party, amicus or intervenor is a corporation:

i)        Identify all its parent corporations, if any; and

United Airlines Holdings, Inc.

ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

United Airlines Holdings, Inc.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Alan S. King        Date: August 1, 2024

Attorney's Printed Name: Alan S. King

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ✓    No ☐

Address: Riley Safer Holmes & Cancila LLP, 1 South Dearborn, Suite 2200, Chicago, Illinois 60603

Phone Number: 312-471-8744        Fax Number: 312-471-8701

E-Mail Address: aking@rshc-law.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>24-2179</u>

Short Caption: <u>Mary Ann Arnold v. United Airlines Inc.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    <u>United Airlines, Inc.</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    <u>Riley Safer Holmes & Cancila LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>United Airlines Holdings, Inc.</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>United Airlines Holdings, Inc.</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

Attorney's Signature: <u>/s/ Noreen Cull</u>    Date: <u>September 19, 2024</u>

Attorney's Printed Name: <u>Noreen Cull</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]  No [✓]

Address: <u>Riley Safer Holmes & Cancila LLP, 1 South Dearborn, Suite 2200, Chicago, Illinois, 60603</u>

Phone Number: <u>312-471-8714</u>    Fax Number: <u>312-471-8701</u>

E-Mail Address: <u>NCull@rshc-law.com</u>

# TABLE OF CONTENTS

**Page**

Jurisdictional Statement ................................................................................. 1

Statement of the Issues ................................................................................. 1

Statement of the Case ................................................................................... 2

    A.    Arnold's Employment and Relevant United Policies ............................ 2

    B.    The Reorganization of the Corporate Communications
           Department ........................................................................................ 3

    C.    Arnold's Performance Issues -- Before and After the
           Reorganization .................................................................................. 4

    D.    Arnold's 2019 Year-End Evaluation, PIP and Voluntary
           Retirement ......................................................................................... 5

    E.    The Core4 Project ............................................................................. 9

    F.    Coworker J.P. ................................................................................... 10

    G.    Arnold's Complaints Over the Years ................................................ 11

Summary of the Argument ......................................................................... 12

Argument ................................................................................................... 14

I.    The District Court's Grant of Summary Judgment on Arnold's Age
    Discrimination Claim Was Proper Because She Cannot Demonstrate a
    *Prima Facie* Case of Discrimination or Establish Pretext ........................... 14

    A.    Arnold Did Not Suffer an Adverse Employment Action Even
           Under the *Muldrow* Standard ............................................................ 14

    B.    There is No Substantially Younger and Similarly Situated
           Employee Who Was Treated More Favorably than Arnold. ................. 21

    C.    Arnold Was Not Meeting United's Legitimate Work Expectations,
           and Arnold Cannot Show Pretext ....................................................... 25

II.    The District Court Properly Granted Summary Judgment to United on
    Arnold's Age-Based Retaliation Claims. ................................................... 30

A.    Arnold Cannot Rely on her Sexual Harassment Complaint as Statutorily Protected Activity...............................30

B.    Arnold's Retaliation Claim Cannot Survive Summary Judgment Because She Did Not Suffer Any Materially Adverse Action...............35

C.    There is No Causal Link Between Arnold's 2017 Age-Discrimination Complaint and Any Allegedly Adverse Employment Action...............................36

III.   The District Court Properly Granted Summary Judgment to United on Arnold's Hostile Work Environment Claim...............................38

A.    To the Extent that Arnold is Still Raising an Age-Based Hostile Work Environment Claim, Arnold Failed to Show that any of the Alleged Harassment Was Based on Her Age or Age-Based Complaint...............................38

B.    The Conduct Arnold Complains About Did Not Rise to the Level of An Abusive Work Environment...............................40

IV.   The District Court Properly Dismissed Arnold's Constructive Discharge Claim Because Arnold Failed to Exhaust her Administrative Remedies and Such Claim Fails in any Event...............................42

A.    Arnold Waived any Argument that her Constructive Discharge Claim was Exhausted...............................42

B.    Arnold Failed to Exhaust her Administrative Remedies with Respect to a Constructive Discharge Claim...............................44

C.    Arnold's Claim of Constructive Discharge Would not Survive Summary Judgment Even if it Had Been Exhausted...............................46

Conclusion...............................49

Certificate of Compliance...............................51

Certificate Of Service...............................52

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alamo v. Bliss,*
  864 F.3d 541 (7th Cir. 2017) ................................................................. 37

*Anderson v. Street,*
  104 F.4th 646 (7th Cir. 2024) ............................................................... 45

*Atanus v. Perry,*
  520 F.3d 662 (7th Cir. 2008) ........................................................... 19, 36

*Bagwe v. Sedgwick Claims Mgmt Servs., Inc.,*
  811 F.3d 866 (7th Cir. 2016) ................................................................. 36

*Boss v. Castro,*
  816 F.3d 910 (7th Cir. 2016) ................................................................. 19

*Bourgeois v. Watson,*
  977 F.3d 620 (7th Cir. 2020) ........................................................... 43, 44

*Burlington N. & Santa Fe Ry Co. v. White,*
  548 U.S. 53 (2006) ................................................................................. 35

*Chapin v. Fort-Rohr Motors, Inc.,*
  621 F.3d 673 (7th Cir. 2010) ................................................................. 47

*Citizens for Appropriate Rural Roads v. Foxx,*
  815 F.3d 1068 (7th Cir. 2016) ............................................................... 42

*Cole v. Illinois,*
  562 F.3d 812 (7th Cir. 2009) ................................................................. 36

*Cont'l W. Ins. Co. v. Country Mut. Ins. Co.,*
  3 F.4th 308 (7th Cir. 2021) ................................................................... 13

*Cyrus v. Union Pacific R.R. Co.,*
  2015 WL 5675073 (N.D. Ill. Sept. 24, 2015) ........................................ 25

*Davis v. Southern Wine & Spirits of Ill.,*
  2018 WL 2432103 (N.D. Ill. May 30, 2018) ......................................... 21

*Duniya v. Power,*
  2023 WL 2755132 (N.D. Ill. April 3, 2023) .......................................... 41

*Eaton v. J. H. Findorff & Son, Inc.*,
   1 F.4th 508 (7th Cir. 2021)................................................................... 37

*EEOC v. Univ. of Chicago Hosps.*,
   276 F.3d 326 (7th Cir. 2002) .......................................................... 47, 48

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998) ............................................................................. 40

*Ference v. Aon Consulting, Inc.*,
   2008 WL 2098037 ................................................................................ 22

*Filar v. Board of Educ. Of City of Chicago*,
   526 F.3d 1054 (7th Cir. 2008) ............................................................. 24

*Fortier v. Ameritech Mobile Communications, Inc.*,
   161 F.3d 1106 (7th Cir. 1998) ........................................................ 25, 26

*Giacoletto v. Amax Zinc Co., Inc.*,
   954 F.2d 424 (7th Cir. 1992) ............................................................... 26

*Gordon v. DeJoy*,
   2023 WL 4762595 ................................................................................ 46

*Gross v. FBL Fin'l Servs., Inc.*,
   557 U.S. 167 (2009) ............................................................................. 30

*Hambrick v. Kijakazi*,
   79 F.4th 835 (7th Cir. 2023) ............................................................... 41

*Harms v. Astrue*,
   2010 WL 4539449 (N.D. Ill. Nov. 3, 2010)...................................... 22, 23

*Howard v. Indianapolis Pub. Sch.*,
   727 F. App'x 198 (7th Cir. 2018) ......................................................... 34

*Huber v. Fox Valley Park District*,
   2021 WL 1546425 (N.D. Ill. April 20, 2021) ....................................... 48

*Kariotis v. Navistar Int'l Transp. Corp.*,
   131 F.3d 672 (7th Cir. 1997).............................................................. 21

*Kinney v. St. Mary's Health, Inc.*,
   76 F.4th 635 (7th Cir. 2023)........................................................... 46, 47

*Lauth v. Covance, Inc.*,
   863 F.3d 708 (7th Cir. 2017)................................................... 25, 28, 36

*Mahran v. Advocate Christ Med. Ctr*,
12 F.4th 708 (7th Cir. 2021) ............................................................ 42

*Martino v. MCI Commc'ns Servs., Inc.*,
574 F.3d 447 (7th Cir. 2009) ............................................................ 30

*McAllister v. Tyson Fresh Meats, Inc.*,
2024 WL 5165729 (D. Kan. Dec. 19, 2024) ........................................ 15

*McCoy v. WGN Cont'l Broad. Co.*,
957 F.2d 368 (7th Cir. 1992) ............................................................ 26

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ........................................................................ 21

*Milczak v. General Motors, LLC*,
102 F.4th 772 (6th Cir. 2024) ........................................................... 17

*Miller v. Borden, Inc.*,
168 F.3d 308 (7th Cir. 1999) ............................................................ 24

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) ................................................................ *passim*

*Nischan v. Stratosphere Quality, LLC*,
865 F.3d 922 (7th Cir. 2017) ....................................................... 32, 39

*Outley v. City of Chicago*,
354 F. Supp. 3d 847 (N.D. Ill. 2019) .................................................. 28

*Patterson v. Avery Dennison Corp.*,
281 F.3d 676 (7th Cir. 2002) ....................................................... 21, 24

*Phillips v. Baxter*,
2024 WL 1795859 (7th Cir. April 25, 2024) ........................................ 17

*Pierce v. Illinois Dep't of Human Servs.*,
355 Fed. Appx. 28 (7th Cir. 2009) ..................................................... 40

*Pu v. Columbia Coll. Chic.*,
934 F. Supp. 2d 964 (N.D. Ill. 2013) .................................................. 23

*Reives v. Illinois State Police*,
29 F.4th 887 (7th Cir. 2022) ............................................................ 19

*Shuler v. McCarthy*,
2019 WL 13171974 (C.D. Ill. 2019) .................................................... 44

*Shures v. Illinois,*
    2023 WL 6035714 (C.D. Ill. Aug. 14, 2023) ........................................ 28

*Skiba v. Ill. Cent. R.R. Co.,*
    884 F.3d 708 (7th Cir. 2018) ........................................ 14, 31

*Smith v. Lafayette Bank & Tr. Co.,*
    674 F.3d 655 (7th Cir. 2012) ........................................ 31

*Thomas v. JBS Green Bay, Inc.,*
    120 F.4th 1335 (7th Cir. 2024) .................................... 15, 18

*Tomanovich v. City of Indianapolis,*
    457 F.3d 656 (7th Cir. 2006) ........................................ 35

*Tyburski v. City of Chicago,*
    964 F.3d 590 (7th Cir. 2020) ........................................ 38, 39

*Walker v. City of Markham,*
    2023 WL 3918965 (N.D. Ill. June 9, 2023) ........................ 30

*Wright v. Ill. Dep't of Children. and Family Servs.,*
    798 F.3d 513 (7th Cir. 2015) ........................................ 47

*Wyninger v. New Venture Gear, Inc.,*
    361 F.3d 965 (7th Cir. 2004) ........................................ 27

*Ziccarelli v. Dart,*
    35 F.4th 1079 (7th Cir. 2022) ...................................... 49

## Rules

Fed. R. Civ. P. 56(a) ...................................................... 14

## JURISDICTIONAL STATEMENT

The jurisdictional statement in Plaintiff-Appellant Mary Ann Arnold's ("Arnold") brief is complete and correct, with the exception that the District Court granted United's motion for summary judgment on June 11, 2024. In accordance with Federal Rules of Appellate Procedure and Circuit Rules, no additional jurisdictional statement is required.

## STATEMENT OF THE ISSUES

United Airlines, Inc. ("United") is dissatisfied with Arnold's statement of the issues and therefore, submits its own as follows.

I.   Should the District Court's grant of summary judgment on Arnold's age discrimination claim be affirmed despite not applying *Muldrow*?

II.  Should the District Court's grant of summary judgment on Arnold's retaliation claim be affirmed where Arnold waived any retaliation claim based on gender, and no reasonable jury could find that United retaliated against Arnold for allegedly engaging in statutorily protected activities?

III. Should the District Court's grant of summary judgment on Arnold's hostile work environment claim be affirmed where Arnold waived any gender-based hostile work environment claim, and no reasonable jury could find that United treated Arnold with discriminatory animus or created a hostile work environment?

IV.  Should the District Court's dismissal of Arnold's constructive discharge claim be affirmed where Arnold failed to exhaust the claim and waived any

argument that she has done so, and no reasonable jury could find her voluntary retirement was a constructive discharge?

## STATEMENT OF THE CASE

United is dissatisfied with Arnold's statement of the case and therefore, submits its own as follows.

Arnold, a former United employee, brought a four-count action alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967 (ADEA) (Counts I and III) and the Illinois Human Rights Act (IHRA) (Counts II and IV) arising from her employment with United. As the District Court found in granting summary judgment to United on all counts, the undisputed material facts demonstrate that Arnold struggled to successfully perform her job duties at United, she was repeatedly counseled about these performance issues and placed on a performance improvement plan (PIP) to help improve her performance, and before her final PIP review meeting, Arnold voluntarily retired from United.

### A.    Arnold's Employment and Relevant United Policies

Arnold was hired by United in March 1994, and she voluntarily retired on May 20, 2020. (R. 44, Def. SOF ¶¶ 1, 55.)[1] During her employment, Arnold was familiar with United's Working Together Guidelines ("WTGs"), that contain certain policies and guidelines applicable to United employees. Arnold recalls reading the following

---

[1] Citations to the District Court record appear as: "(R. (docket no.), a description of the citation source, followed by page number or paragraph number." Citations to the Appellant's short appendix will appear as: "([document title], A__)," denoting appendix page number. Citations to filings with this Court will appear as "(Dkt. __)," denoting docket entry, followed by document title and page number.

sections of the WTGs during her employment: "Promoting Dignity and Respect: Harassment and Discrimination Do Not Fly Here"; "Protection Against Retaliation"; "Reporting Offensive Workplace Behavior: Employees' Responsibilities"; and "Performance Management Process", including "Performance Improvement Plan (PIP)". (*Id.* ¶¶ 3-4.) Under the WTGs, the PIP policy states in part as follows:

> Employees who do not meet performance expectations at either Mid-year or year-end will work with his/her leader to develop a plan that maps out a path to successful performance. The employee will be expected to meet the requirements outlined in the PIP within a specified time-frame. Employees who do not meet performance expectations will be subject to termination of employment.

> The above process will also apply to employees who partially meet expectation at year-end two years in a row **or at the discretion of the leader**.

(*Id.* ¶ 7) (emphasis added). Arnold knew that a rating of "partially meets" did not require a PIP, but she understood that the PIP process could be used at the discretion of her leader. (*Id.* ¶ 8.)

## B. The Reorganization of the Corporate Communications Department

Prior to a reorganization of United's corporate communications functions in September 2019, Arnold was part of a communications group responsible for internal United communications relating to airport operations. Effective September 3, 2019, United reorganized its corporate communications functions and moved them under its Corporate Communications department. As part of that reorganization, Arnold and her entire team, as well as other communications employees, were moved under Corporate Communications. (*Id.* ¶¶ 16-17.) Arnold and one of her co-workers from her prior team ("J.P.") began reporting to Courtney Schall ("Schall"), who reported to

3

Laura Patterson ("Patterson"), Director of Operations Communications. Following the reorganization and for the remainder of her employment, Arnold's position was Sr. Writer in the Corporate Communications department, and versus her previous role in communications for airport operations, some of Arnold's roles and responsibilities changed but the basic function of those positions was the same in that they both dealt with internal corporate communications. (*Id.* ¶¶ 17-18.)

## C. Arnold's Performance Issues – Before and After the Reorganization

Prior to the reorganization, and before Arnold began reporting to Schall and Patterson, her then-current manager Stephanie Millichap ("Millichap") met with Genesis Tirado ("Tirado"), a United Human Resources Manager, and informed Tirado that Millichap was having performance concerns with Arnold. Millichap told Tirado that she had consistently coached Arnold on these issues, and that she wasn't seeing improvement. (*Id.* ¶ 30.) Millichap's performance concerns and suggestions for Arnold's improvement were reflected in Millichap's 2018 year-end and 2019 mid-year performance reviews of Arnold. (*Id.* ¶¶ 25, 27-28.)

Specifically, despite giving Arnold an "on track with peers" rating in her 2019 mid-year review, Millichap noted in the review several performance issues and areas for improvement that remained a problem after the reorganization, including that Arnold should focus on creating timelines, sticking to deadlines, developing her presentation skills and executive presence, and developing the skill of "end-to-end project ownership" including "proactively seeking information and answers, creating

4

structure, setting deadlines and following up with your partners in order to get things done." (R. 44, Def. SOF ¶¶ 27-28; R. 46, Pl. Resp. to Def. SOF ¶¶ 26-27.)

When Arnold reported to Schall, Schall noticed the same performance issues that Millichap had observed, and Schall perceived these to be systemic performance issues, not one-off mistakes here and there that are quickly rectified. (R. 44, Def. SOF ¶ 36.) By the end of 2019, it was Schall's assessment that Arnold's work performance was "subpar, at very best." At her deposition, Schall described why she deemed Arnold's performance as subpar as follows: "Ability to meet deadlines. The amount of editing – … we're a group in corporate communications, a group of writers. The amount of editing that had to go into the content that she was generating. The amount of direction and redirection that she needed. The … amount of times that… she would be assigned something and need to be reminded to get it done. All of this is reflected in the performance review and as far as what we were seeing in terms of the deficiencies versus what we would expect members of our team to be able to accomplish as functional members of a corporate communications organization." (*Id.* ¶ 37.)

### D.    Arnold's 2019 Year-End Evaluation, PIP and Voluntary Retirement

Near the end of 2019, Schall had a collaborative discussion with Patterson, Millichap, and Patterson's supervisor Dana Reinglass about Arnold's performance versus other individuals on the team in the same job level and what to do about trying to fix Arnold's much more pronounced level of deficiency. The determination made collaboratively by Schall, Patterson, Millichap and Reinglass was to list Arnold as

partially meeting expectations and to put her on a PIP. (*Id.* ¶ 38.) Arnold received a 2019 year-end review with an overall rating of "Partially Meets" expectations. (*Id.* ¶ 33.)

In explaining the decision to put Arnold on a PIP, Schall testified in part: "It was just determined that that was the right approach for Mary Ann, given the many, many performance deficiencies we were seeing over a long period of time and wanting to help her get to a better place... so that she was meeting the expectations of her role. And because Mary Ann... demonstrated over time this consistent need to have a lot of structure associated with anything that she did, a lot of clarity, as far as the direction, the [PIP] was deemed to be most helpful and supportive of her so that we could get her to a better place performance-wise in the organization where she was – I mentioned this before. She was just the clear... outlier, as far as – you know, she was kind of at the bottom of the performance list in her job grade and across corp comm as a whole, even looking at everybody." (*Id.* ¶ 40.)

In February 2020, Arnold was issued a PIP. The PIP described Arnold's performance deficiencies, plans for improvement, and consequences if expectations were not met during the 60-day PIP period. (*Id.* ¶ 41.) The PIP stated in part: "Immediate and sustained improvement is expected to improve your current performance rating of 'partially meets expectations'; further disciplinary action up to and including termination could result. Failure to achieve expected behaviors and/or performance results will lead to disciplinary actions, up to and including

termination." (*Id*.¶ 42.)[2] With respect to what her managers included in the PIP under performance deficiencies and behavioral/skill deficiencies, Arnold does not dispute them. Rather, Arnold testified that she "can't recall" whether these deficiencies were legitimate performance assessments. (R. 44, Def. SOF ¶ 43; R. 46, Pl. Resp. to Def. SOF ¶ 42.)

During the PIP period, Schall and Patterson met periodically with Arnold to discuss her progress with the PIP, and Schall continued to have one-on-one meetings with Arnold. (R. 44, Def. SOF ¶ 45.) Arnold's performance deficiencies continued during the PIP period. For example, Schall and Patterson had a PIP progress check-in meeting with Arnold on April 23, 2020, and later that day Schall sent an email and attached recap to Arnold. The recap of the PIP progress check-in included the following points:

> (a) Arnold submitted an InTheNoc piece for leader Jim DeYoung late in the day on February 24, 2020 with revisions still needed, which Arnold admits;
>
> (b) certain March content for InTheNoc that was due from Arnold on March 23rd or 24th that Arnold didn't provide until 8:00 pm on March 29, with significant edits still needed such that the final message went out very late on March 31, which Arnold admits;
>
> (c) a leader message that Arnold was requested to provide for business partner Lori Augustine in early April, with Schall noting that the process didn't kick off until after a reminder from Schall to Arnold on 4/14 to generate a draft message, with the final message being sent on 4/17, well beyond the agreed-upon early month deliveries for Augustine's message, which Arnold does not dispute;
>
> (d) Arnold's deadline for an initial draft of another brief leader message from Augustine that Arnold was due to submit to Schall by March 6, so that a draft could be sent to Augustine for review by 3/9 or 3/10 in advance of a targeted

---

[2] Arnold acknowledges that at no time after she was issued the PIP was she subjected to any disciplinary actions such as demotion, salary reduction, or termination of her employment. (*Id*.)

3/11 deployment date, where Arnold failed to provide the draft, which Arnold admits;

(e) Arnold submitted a distribution list resource document to Schall on-time on March 13 but there were still many holes to fill and adjustments to be made, and another team member had to take this on through completion, which Arnold does not dispute;

(f) Arnold had not submitted on-time delivery of Thursday EIDS updates beyond a single slide, which Arnold does not dispute;

(g) Arnold had not by then identified any training opportunities to improve her presentation skills as requested, which Arnold admits;

(h) Arnold had by then started but not completed a requested project-tracker that was to be used to review her project progress and workload each week, which Arnold admits; and

(i) Arnold had not by then scheduled additional 1:1 sessions with Schall and Patterson to discuss personal development and progress nor provided an agenda for such meetings as requested, which Arnold does not dispute.

(*Id.* ¶ 50.)

Arnold did not successfully complete her PIP because there were things she completed very late, at the last minute, and other things she did not complete at all. (*Id.* ¶ 53.) However, the meeting during which Schall and Patterson were to give their final feedback to Arnold on the PIP deliverables never took place because Arnold retired before that meeting. (*Id.* ¶¶ 53-54.) Specifically, on May 20, 2020, Arnold emailed Schall and Patterson and stated: "Team, This will serve as my official notice of my involuntary retirement. My last day will be Tuesday, June 2. I'll be wrapping up all of my work over the next week so let me know who will absorb my work so I may advise my business owners for a seamless transition." (*Id.* ¶ 55.)[3]

---

[3] The final PIP meeting had been rescheduled a couple of times from its original May 8 date due to other conflicts relating to business and operational needs. (R. 46, Def. Reply to Pl. Add. Facts ¶ 37.)

Prior to Arnold sending her May 20, 2020 retirement email, no one at United, including Schall, Patterson or any human resources personnel, ever told Arnold that she was discharged or was going to be discharged. (*Id.* ¶ 56.) Additionally, no one at United ever made any age-related comments or negative comments about Arnold's age. (R. 44, Def. SOF ¶ 69; R. 46, Pl. Resp. to Def. SOF ¶ 68.)

### E.    The Core4 Project

Arnold testified that around the time of the reorganization "when things were shifting," a project she was working on – Core4 - was turned over to someone younger. (R. 44, Def. SOF ¶ 70.) By the time of the reorganization in September 2019, the Core4 project, a United service concept introduced in or about January 2018, had been in place for well over a year, and other than occasional limited administrative requests, Core4 was essentially complete and was no longer its own project.[4] As part of the reorganization and to promote efficiencies, a team was created and charged with managing communications for large integrated campaigns and projects that spanned across many operations teams. Patterson added responsibility for any remaining Core4 tasks, along with multiple operations-wide type projects that Arnold was not a part of, to that team. (*Id.* ¶ 71.)

When Patterson assigned the projects to the newly created team, including the remaining Core4 tasks, Patterson was not aware of and did not consider the ages of the team members or Arnold's age. Neither Arnold's age nor any complaints she may

---

[4] In her Complaint, Arnold admitted that at the time of the restructure, the Core4 project was almost "85% complete". (R. 44-1, Arnold Dep., Ex. 29, ¶ 21.)

have made played any role in Patterson's decisions, including assigning remaining Core4 tasks to the newly created team, Patterson's assessments of Arnold's job performance and the collective decision to put Arnold on a PIP. (*Id.* ¶ 72.)

### F.    Coworker J.P.

After the reorganization, both Arnold and her coworker J.P. reported to Schall as senior writers with similar job duties. (R. 44-2, Schall Dep. Vol I, p. 50.) Both Arnold and J.P. are over 40 years old, and J.P. is 6 years and 4 months younger than Arnold. (R. 46, Pl. Resp. to SOF ¶ 1; R. 54, Def. Reply to Pl. Add'l Facts ¶ 8.)  Schall testified that at the end of 2019, she participated in a calibration process which considered the performance of her direct reports, including Arnold and J.P. (Schall Dep. Vol. II, pp. 73-74.) In assessing Arnold and J.P., Schall looked at prior performance reviews for each and had conversations with their prior managers, as Arnold and J.P. had only started reporting to Schall in September 2019. (*Id.* pp. 74-77.) For her year-end 2019 performance evaluation, J.P. received an overall rating of "meets expectations" and was not put on a PIP because PIPs are not used for employees who are meeting expectations. (*Id.* pp. 78-79.) Schall did note some issues J.P. had with her overall attitude and demeanor when she got last minute requests on assignments, however, J.P. took that feedback and made positive changes. (*Id.* pp. 75-76.) J.P. also occasionally missed deadlines, but was communicative with Schall about adjusting and reestablishing deadlines. (*Id.* p. 121.) By contrast, Arnold was not good at communicating about changes to a plan and reestablishing the plan. (*Id.*) The performance issues that Schall and the other managers observed with Arnold were

systemic issues that Arnold repeated consistently over time. (*Id.* pp. 121-122.) These kinds of systemic performance issues were not observed with J.P. (*Id.* p. 122.)[5]

### G.    Arnold's Complaints Over the Years

Back in 2017, Arnold made a complaint against Danyele Hawkins ("Hawkins") for age discrimination and failure to promote based on disability. Arnold filed this complaint both internally with United (which found that they could not substantiate her claims) and with the Illinois Department of Human Rights ("IDHR") where she later withdrew the complaint. (R. 54, Def. Reply to Pl. Add'l Facts ¶ 2.) In 2018, Arnold made an internal complaint against her then supervisor, Stephen Jones, alleging sexual harassment. Arnold initially made her allegations against Jones anonymously on July 6, 2018, and later resubmitted her allegations using her name on September 28, 2018. (*Id.* ¶ 3.) United investigated and found no merit to Arnold's 2018 complaint about Jones, but United nevertheless changed Arnold's reporting relationship and seating location as a result of the Jones complaint. (*Id.* ¶ 40.) In 2019, in connection with the reorganization, Arnold raised additional issues internally, including objecting to being asked to sit together with her team, including allegedly in close proximity to Jones. United investigated each of Arnold's concerns and found them to be without merit. (*Id.* ¶¶ 14, 18, 38, 40.) Nevertheless, Arnold was given a better seating solution further away from Jones, which satisfied Arnold. (*Id.* ¶ 15.)

---

[5] Additionally, Schall testified that she probably gave Arnold *far less* work to do than J.P. because Arnold was a far poorer and far less reliable performer.  (*Id.* pp. 50-51.)

## SUMMARY OF THE ARGUMENT

The District Court's grant of summary judgment to United on all of Arnold's claims of age discrimination, retaliation, hostile work environment, and constructive discharge should be affirmed in all respects. (Op., S.A.00001-00032.)

First, Arnold's age discrimination claim fails for multiple, independent reasons. Arnold cannot establish a *prima facie* case of age discrimination because she was not meeting United's legitimate work expectations at the time of any challenged actions, she has not identified any comparator who was substantially younger and similarly situated to her but treated more favorably, and she did not suffer any adverse employment action even under the standard announced by the Supreme Court in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). Additionally, even if she could establish a *prima facie* case of discrimination, the District Court correctly concluded that United had legitimate, non-discriminatory reasons for the challenged actions that were not a pretext for age discrimination.

Second, concerning her retaliation claim, Arnold has not demonstrated that she suffered any materially adverse employment actions (a more exacting standard than the one adopted for discrimination claims in *Muldrow*) or that there is any causal connection between any alleged protected activity and any alleged adverse actions. The only statutorily protected activity that would support Arnold's retaliation claim was a complaint of age discrimination made in 2017, years before any of the actions she challenges, and her complaints of gender-based harassment cannot support her age-based retaliation claims.

Third, the District Court properly concluded that Arnold cannot establish any conduct by United, even in combination, that rose to the level of an abusive work environment and that Arnold failed to show that any of the alleged harassing behavior was based on her age or any alleged age-related protected activity. Further, Arnold has waived any gender-based hostile work environment claim by not including it in her Complaint or presenting it to the District Court.

Finally, United was properly granted dismissal on Arnold's constructive discharge claim for multiple reasons. First, the District Court correctly held that Arnold failed to administratively exhaust a constructive discharge claim and, in any event, waived any argument that she did exhaust. There is no basis for excusing that waiver. Additionally, even if Arnold had preserved a constructive discharge claim, the conduct Arnold alleges, even if true, falls far short of the type that would support a constructive discharge claim, which must be even more abusive and egregious than the high standard for hostile work environment. Arnold's constructive discharge claim also fails because she voluntarily resigned and the incidents alleged in this case do not rise to the level necessary for a reasonable employee in Arnold's position to believe that the handwriting was on the wall that had she not resigned, her termination was imminent and inevitable.

## **STANDARD OF REVIEW**

The Seventh Circuit reviews a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the non-moving party. *Cont'l W. Ins. Co. v. Country Mut. Ins. Co.,* 3 F.4th 308, 314 (7th Cir. 2021). Summary judgment is

appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Skiba v. Ill. Cent. R.R. Co.,* 884 F.3d 708, 717 (7th Cir. 2018).

## **ARGUMENT**

### I.     The District Court's Grant of Summary Judgment on Arnold's Age Discrimination Claim Was Proper Because She Cannot Demonstrate a *Prima Facie* Case of Discrimination or Establish Pretext

As explained below, the District Court's grant of summary judgment to United on Arnold's age discrimination claim was proper and should be affirmed.

### A.     Arnold Did Not Suffer an Adverse Employment Action Even Under the *Muldrow* Standard

Arnold contends that summary judgment on her age discrimination claim was improper because the District Court did not apply the standard announced by the Supreme Court in *Muldrow, supra,* with respect to whether Arnold suffered any "adverse employment action" and further contends that what she characterizes as her "job transfer" and placing her on the PIP constituted adverse employment actions. These arguments should be rejected.

In *Muldrow,* which involved an employee's "forced transfer" from one job position to another, the Court rejected a "significant harm" standard and held that "[a]lthough an employee must show harm from a forced transfer to prevail in a Title VII suit, she need not show that the injury satisfies a significance test." 601 U.S. at 350.The Court found that Title VII's statutory language "requires Muldrow to show that the transfer

14

brought about some 'disadvantageous' change in an employment term or condition." *Id*. at 354. "To make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition." *Id*. at 354-55.

Arnold tries to align her case with *Muldrow* by describing her situation as a "job transfer." However, contrary to cases like *Muldrow* where the claim is that the plaintiff was singled out for a discriminatory forced job transfer, this is not a job transfer case. Rather, this case involves the reorganization of United's entire corporate communications functions resulting in many employees under that function – including Arnold and her entire team – being moved under the Corporate Communications department and assigned some new duties. This is very different from the "forced transfer" at issue in *Muldrow*, and Arnold of course makes no contention that United's entire corporate communications reorganization was designed merely to cause her a job transfer.[6]

As the District Court noted, "Arnold argues she suffered two adverse employment actions: being taken off the Core4 project and shifted to projects that had less visibility and interaction with partners, and being placed on the PIP." (Op., S.A. 00018.) First, under the *Muldrow* standard, the reorganization of United's corporate

---

[6] United acknowledges that this Court applied *Muldrow* beyond the job transfer context in *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335 (7th Cir. 2024). However, United respectfully notes that *Muldrow* refers throughout to a "transfer," "forced transfer," "transferees" and what "a transferee" must show. It does not appear that the Supreme Court expressly stated that the standard it announced would apply to other alleged adverse employment actions. *See McAllister v. Tyson Fresh Meats, Inc.*, 2024 WL 5165729 (D. Kan. Dec. 19, 2024) ("*Muldrow* involved a plaintiff's challenge to a discriminatory transfer. Courts have grappled with deciding whether *Muldrow* should apply outside the transfer context, and if so, to which Title VII claims."). Even assuming the *Muldrow* standard applies to this case, the District Court properly found that Arnold suffered no adverse employment action.

communications functions and reassigning the few remaining Core4 tasks to a different team did not constitute an adverse employment action for Arnold. Again, unlike *Muldrow,* this case involves a plainly lawful decision by United to reorganize its internal communications functions, which impacted not only Arnold, but her entire team. This type of neutral organizational change impacting numerous employees is inherently less "adverse" than situations where an employee is singled out for a forced transfer. Moreover, the record is undisputed that following the reorganization and for the remainder of her employment at United, Arnold's position was Sr. Writer in the Corporate Communications department, and versus her previous role in communications for airport operations, some of Arnold's roles and responsibilities changed but the basic function of those positions was the same in that they both dealt with internal corporate communications. (*Id.* ¶¶ 17-18.)

Indeed, this case is far different from *Muldrow*, where the plaintiff's forced job transfer plainly involved disadvantageous job changes. There, before her job transfer, Muldrow "worked as a plainclothes officer in the St. Louis Department's specialized Intelligence Division . . . [where] she investigated public corruption and human trafficking cases, oversaw the Gang Unit, and served as head of the Gun Crimes Unit. . . . Muldrow was also deputized as a Task Force Officer with the [FBI] – a status granting her, among other things, FBI credentials, an unmarked take-home vehicle, and the authority to pursue investigations outside of St. Louis." 601 U.S. at 350. Muldrow was transferred to a uniformed police officer job in which she supervised the day-to-day activities of neighborhood patrol officers and lost all her prior perks,

16

including receiving a less advantageous work schedule that required her to work weekends, removal from the Intelligence Division, and losing her FBI status and take-home car. *Id*. at 351-52. Here, Arnold suffered no such "harm respecting an identifiable term or condition of employment." *Id*. at 355. *See Phillips v. Baxter*, 2024 WL 1795859, *3 (7th Cir. April 25, 2024) (The plaintiff's job reassignment was not an adverse action because there was no evidence that it left him "worse off" under the *Muldrow* standard. "Indeed, the reassignment did not change his position, job duties, salary, or benefits and the new office was even in the same building … The rest of Phillips's complaints--*e.g.,* changes in his duties (*all within the scope of his role*)…were mostly temporary inconveniences.") (emphasis added).

Likewise, this case is far different from *Milczak v. General Motors, LLC*, 102 F.4th 772 (6th Cir. 2024), cited by Arnold. The *Milczak* court applied the *Muldrow* standard to the plaintiff's two forced job transfers and concluded that the transfers (which the plaintiff was singled out for) were adverse employment actions.  In holding that the transfers demonstrated disadvantageous changes in employment terms and conditions, the court noted that "Milczak's loss of opportunity to make overtime pay plainly impacts compensation, terms and conditions of employment. The same is true of the lack of adequate training, the supervisory responsibilities over difficult trade employees, the evening hours he was expected to work, the position's failure to utilize his skills, and the fact that he was forced to work by himself. All of these things created at least 'some harm' and left him 'worse off.'" *Id*. at 787 (citations omitted).

In contrast, no such harm was associated with Arnold's position after the reorganization, where there was no impact on her compensation, training or work schedule, and she and her team were still doing internal communications work. Arnold summarily asserts that after the reorganization, she had "far less visibility and partner interaction" (Dkt. 18, Appellant Br. at 21) but offers no evidence supporting that contention. In fact, the record is clear even from her work assignments during the PIP that she was still writing communications pieces for leaders and business partners. (R.44, Def. SOF ¶ 50.) The only thing that changed was that Arnold was previously part of a communications group that was responsible for internal communications relating only to airport operations, rather than other internal corporate communications. (*Id*. at ¶¶ 16-18.)[7]

Likewise, the decision to reassign the remaining Core4 tasks (and other similar projects that Arnold was not involved with) to a newly created team in conjunction with the reorganization was not an adverse employment action for Arnold. By the time of the reorganization, the Core4 project had been in place for well over a year, and other than occasional limited administrative requests, Core4 was essentially complete and was no longer its own project. (R. 44, Def. SOF ¶ 71.) In fact, as Arnold admits, at the time of the reorganization, the Core4 project was almost "85% complete". (R. 44-1, Arnold Dep., Ex. 29, ¶ 21.)

---

[7] Arnold also cites *Thomas v. JBS Green Bay, Inc., supra*, but that case was decided on a motion to dismiss. There, this Court concluded that delaying training for three years, denying vacation requests, and transferring the plaintiff to a different shift even though it knew that this caused him problems in raising a young child, could be adverse employment actions under the *Muldrow* standard. Arnold did not suffer comparable or any harm here.

Similarly, Arnold's PIP does not constitute an adverse employment action. *See, e.g., Reives v. Illinois State Police*, 29 F.4th 887, 894 (7th Cir. 2022) ("[N]egative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions."); *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016) (placement on a PIP "is simply not materially adverse in the discrimination context"). Arnold's (and the EEOC's in its Amicus brief) attempt to portray Arnold's ordinary PIP as some sort of onerous "Super PIP" is not supported by the record or the case law. For example, Arnold relies on *Atanus v. Perry*, 520 F.3d 662 (7th Cir. 2008), a case involving a "letter of instruction," where the court found that the letter of instruction did not rise to the level of an adverse employment action where "[t]he letter itself does not state that Ms. Atanus is being disciplined for her second failure to follow FAR 4.2; rather, it warns that disciplinary action may be taken if she fails to comply with the directive of the letter. Ms. Atanus was not terminated or demoted, and she does not allege that her job responsibilities were changed *because of the letter*." *Id.* at 675 (emphasis added). The same is true here. Arnold was not demoted, terminated or otherwise disciplined, and the PIP merely indicated Arnold could be subject to disciplinary action if she failed to meet the PIP requirements. Moreover, there is no evidence suggesting that Arnold's job responsibilities were changed *because of the PIP,* as she continued doing internal corporate communications assignments during the PIP period.

Arnold and the EEOC argue that Arnold's PIP was particularly onerous, in large part, because Arnold could have been subjected to disciplinary action, including

discharge, for failing to meet PIP requirements or for continued performance problems after the PIP. Nothing about this reality makes the PIP onerous or even unusual, as these are the conditions – potential termination for poor performance – that apply to every at-will employee working anywhere, with or without a PIP.

In concluding that Arnold had not suffered an adverse employment action, the District Court noted that the "Seventh Circuit has stated time and time again that 'not everything that makes an employee unhappy is an actionable adverse action.'" (Op., S.A. 00018.) (citations omitted.) Arnold was certainly unhappy that Core4 was reassigned and that she received a PIP, but nothing in *Muldrow* suggests "everything that makes an employee unhappy" now amounts to an actionable adverse employment action. To accept that proposition is to effectively eliminate the adverse employment action requirement altogether. It is easy to imagine that nearly every business reorganization or change in an employee's job duties will include some inconvenience or something that makes the employee unhappy, but for courts to make every such action legally actionable is to wade into the type of micro-managing of personnel decisions that this Court and others have consistently cautioned against. As the District Court noted here, the "Seventh Circuit has stated 'in more than one hundred reported opinions' that a district court is 'not a super-personnel department that [can] substitute [its] criteria for an employer's for hiring, promoting, or disciplining employees.'" (*Id.*, S.A. 00020.) (citation omitted.)

In short, even under *Muldrow*, Arnold cannot show that the reassignment of remaining Core4 functions and/or placing her on a PIP amounted to "harm respecting

an identifiable term or condition of employment." 601 U.S. at 355. For this reason alone, summary judgment on Arnold's age discrimination claim should be affirmed.

### B. There is No Substantially Younger and Similarly Situated Employee Who Was Treated More Favorably than Arnold.

Under the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must establish a *prima facie* case by showing that (1) she belongs to a protected class, (2) she was meeting defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) defendant treated similarly situated individuals outside her protected class more favorably. *See, e.g., Davis v. Southern Wine & Spirits of Ill.*, 2018 WL 2432103, *3-*4 (N.D. Ill. May 30, 2018). Here, Arnold also has not shown that any similarly situated employee was treated more favorably. To meet her burden, Arnold must show that another employee is "directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Also, when both the plaintiff and the comparable employee are in the protected age group, the other employee must be "substantially younger," which means "at least a ten-year age difference; any age disparity less than 10 years is 'presumptively insubstantial.'" *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 n.1 (7th Cir. 1997) (internal citation omitted).

Arnold focuses on co-worker J.P., but the undisputed facts demonstrate that J.P. is not substantially younger than Arnold, and in any event, there were material differences between J.P.'s and Arnold's work performance. Both Arnold and J.P. are over 40 years old, and J.P. is only 6 years and 4 months younger than Arnold. (R. 46, Pl. Resp. to SOF ¶ 1; R. 54, Def. Reply to Pl. Add'l Facts ¶ 8.) The age gap between

Arnold and J.P. of less than 7 years is "presumptively insubstantial," and Arnold has presented no evidence that age was considered in any of the challenged decisions. *See Ference v. Aon Consulting, Inc.,* 2008 WL 2098037, *15 n.15 ("Also, we are unconvinced that the decisions were discriminatory based upon age because Keaveney hired individuals within Ference's protected age group. For example, Childress was hired . . . despite being only seven years younger than Ference."); and *Harms v. Astrue*, 2010 WL 4539449, *7 (N.D. Ill. Nov. 3, 2010) (age difference of less than 10 years was presumptively insubstantial).

Further, even if J.P. had been substantially younger than Arnold, the undisputed facts show that their job performance was materially different. After the reorganization, both Arnold and J.P. reported to Schall as senior writers with similar job duties. (Schall Dep. Vol I, p. 50.) Schall testified that at the end of 2019, she participated in a calibration process where the performance of her direct reports was considered. (Schall Dep. Vol. II, pp. 73-74.) In making her assessments of Arnold and J.P., Schall looked at prior performance reviews for each and had conversations with their prior managers. (*Id*. pp. 74-77.)   J.P. received an overall year-end 2019 performance evaluation rating of "meets expectations" and was not put on a PIP because PIPs are not used for employees who are meeting expectations. (*Id*. pp. 78-79.) Schall noted some issues with J.P.'s overall attitude and demeanor when she got last minute requests on assignments, however, it is undisputed that J.P. took that feedback and made positive changes. (*Id*. pp. 75-76.)   J.P. also occasionally missed deadlines, but was communicative with Schall about making adjustments and

22

reestablishing deadlines. (*Id*. p. 121.) By contrast, Arnold was not good at communicating about changes to a plan and reestablishing the plan. (*Id*.) The performance issues that Schall and the other managers saw with Arnold were systemic issues that Arnold consistently repeated. (*Id*. pp. 121-122.) These kinds of systemic performance issues were not observed with J.P. (*Id*. p. 122.)[8] In short, J.P. is not substantially younger than Arnold and per their supervisors' assessments, Arnold was a far poorer performer than J.P.

Also, with respect to the Core4 work, Arnold has not presented any evidence as to the ages of the allegedly younger employees who received the remaining Core4 functions, and thus, she has not established that they were "substantially younger" than her, as she is required to do. *See Pu v. Columbia Coll. Chic.,* 934 F. Supp. 2d 964, 972 (N.D. Ill. 2013) ("Pu does not provide the ages of Beasley, Manning, or Kapoor… Thus, …Pu cannot rely on Beasley, Manning, or Kapoor as similarly situated employees to establish her ADEA claim."). Further, Patterson testified without contradiction that she did not know or consider their ages when assigning the project. In any event, the employees were not similarly situated to Arnold. As part of the reorganization and to promote efficiencies, a team was created and charged with managing communications for large integrated campaigns and projects that spanned across many operations teams (as opposed to just one team). Patterson added responsibility for any remaining Core4 tasks, along with multiple operations-wide type projects that Arnold was not a part of, to that team. (R. 44, Def. SOF ¶ 71.)

---

[8] Additionally, Schall testified that she probably gave Arnold *far less* work to do than J.P. because Arnold was a far poorer and far less reliable performer. (*Id*. pp. 50-51.)

Thus, employees on that team were not "directly comparable to [Arnold] in all material respects." *Patterson*, 281 F.3d at 680.

The cases Arnold relies upon are easily distinguishable. In *Miller v. Borden, Inc.*, 168 F.3d 308 (7th Cir. 1999), the court was considering a *prima facie* case of retaliation under the ADEA, not discrimination. *Id.* at 313-14. In any event, the court held that in a "fungibility" type of situation where job duties are absorbed post-termination by substantially younger employees, the plaintiff needed to show not only that he was treated less favorably than the younger employees, but also "that these employees were similarly situated to himself." *Id.* at 313. Again, J.P. was not substantially younger than Arnold and she was not similarly situated based on performance. Likewise, it is unknown whether the employees receiving the remaining Core4 tasks were substantially younger than Arnold and they were not similarly situated to Arnold.

Arnold's reliance on *Filar v. Board of Educ. Of City of Chicago*, 526 F.3d 1054 (7th Cir. 2008), also does not aid her cause. The issue in *Filar* was whether employees with more seniority could be considered similarly situated to the plaintiff. In its analysis, the court noted that "[a]ll things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination. The 'similarly situated' prong establishes whether all things are in fact equal." *Id.* at 1061. In this case, all things were not equal. Arnold was not similarly situated to J.P. or to the allegedly younger employees who took over completion of the Core4 project.

### C.     Arnold Was Not Meeting United's Legitimate Work Expectations, and Arnold Cannot Show Pretext

In determining whether an employee was meeting legitimate expectations, the court must view a plaintiff's "job performance through the eyes of [her] supervisors at the time of the adverse employment action" (internal citation omitted). *Cyrus v. Union Pacific R.R. Co.,* 2015 WL 5675073, *5 (N.D. Ill. Sept. 24, 2015). Arnold's subjective "belief that [s]he was performing [her] job adequately is not relevant to the question of whether [United] believed it had a legitimate non-discriminatory basis" for taking the challenged actions." *Lauth v. Covance, Inc.*, 863 F.3d 708, 715-716 (7th Cir. 2017) (granting summary judgment to employer on age discrimination and retaliation claims). As described above, Arnold was not meeting United's legitimate performance expectations at the time of the alleged adverse employment actions. Arnold's performance deficiencies were well documented, Millichap and Schall both had similar performance issues with her before and after the reorganization, Arnold had been given a "partially meets" expectations performance rating for 2019, and was put on a PIP for performance reasons, which she did not successfully complete.  (R. 44, Def. SOF at ¶¶ 25, 28, 30, 33, 34, 36- 41, 53.)

Arnold claims that evidence of past performance is relevant to a plaintiff's performance at the time of the subject employment decisions.  However, the cases she relies upon undermine her argument.  In *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106 (7th Cir. 1998), this Court affirmed the grant of summary judgment for the employer on the plaintiff's age discrimination claim, in part, because the employee failed to establish that he was meeting the employer's

legitimate expectations at the time of his termination, and thus could not make out a *prima facie* case of discrimination. *Id.* at 1113-14. The Court observed that "[t]he record indicates that Mr. Fortier had received positive performance evaluations in the years prior to [the] negative evaluation; we must keep in mind, however, that the relevant time to consider is the time of discharge. … Certainly, earlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken." *Id.* at 1113.  Also, *Giacoletto v. Amax Zinc Co., Inc.*, 954 F.2d 424 (7th Cir. 1992), is likewise distinguishable. First, that case involved appellate review of a jury verdict in favor of the plaintiff, not a grant of summary judgment. Additionally, the court mentioned prior performance evaluations in the context of noting that "Giacoletto received a suspiciously negative 1985 performance evaluation just six days before he was fired." *Id.* at 426. Here, there were negative assessments of Arnold's performance both prior to and after the reorganization, Arnold was never terminated, and she was given the opportunity to improve her performance through the PIP period.

Further, even assuming Arnold could establish a *prima facie* case of discrimination (and United maintains she cannot), Arnold must establish that United's non-discriminatory reasons for its actions were a pretext for age discrimination. As the District Court correctly concluded, she cannot. The issue of "pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d

368, 373 (7th Cir. 1992). "An employee's self-evaluation cannot create an issue of fact about an employer's honest assessment of inadequate performance." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 980 (7th Cir. 2004).

United has articulated legitimate, non-discriminatory reasons for reassigning the remaining Core4 tasks (R. 44, Def. SOF ¶ 71), and Arnold offers no evidence to call into question United's decision. In fact, Arnold testified at her deposition that she could not even recall the explanation given for this change. (*Id.* at ¶ 70.) There is simply no evidence that Patterson did not honestly believe in her reasons for assigning certain tasks, including the remaining Core4 tasks and other tasks Arnold had no involvement with, to the newly-created team.

Likewise, there is no evidence that calls into question whether United honestly believed in its reason for putting Arnold on a PIP with a chance to improve her performance over 60 days. In that regard, Schall testified in part: "It was just determined that that was the right approach for [Arnold], given the many… performance deficiencies we were seeing over a long period of time and wanting to help her … so that she was meeting the expectations of her role." (Def. SOF ¶ 40.) Arnold does not dispute the performance and behavioral deficiencies cited in the PIP. Rather, Arnold testified that she "can't recall" whether these deficiencies were legitimate assessments of her performance. (Def. SOF ¶ 43; Pl. Resp. to Def. SOF ¶ 42.)

Arnold points to one occasion where Michaelson, an HR employee, allegedly asked Arnold when meeting her for the first time on October 1, 2019, what her seniority

was and sharing "she had only been with the company for a short time." (R. 44, Def. SOF ¶ 69.) Even if true, asking Arnold how long she had been with the company during an initial conversation – and sharing how long she (Michaelson) had been with the company – were plainly routine pleasantries not indicative of age discrimination. There also is no evidence that Michaelson made any of the challenged decisions. "'[S]tray remarks in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus.'" *Outley v. City of Chicago,* 354 F. Supp. 3d 847, 866-67 (N.D. Ill. 2019) (internal citation omitted). Moreover, this Court has acknowledged that a question about retirement cannot, in and of itself, raise an inference of discriminatory motive. *See Lauth*, 863 F.3d at 715. *See also Shures v. Illinois*, 2023 WL 6035714, *14 (C.D. Ill. Aug. 14, 2023) ("Plaintiff has failed to cite to any case in which a court has found questions about an employee's retirement date sufficient evidence of pretext, or otherwise sufficient to raise a factual dispute as to whether the employee would have been terminated but for their age. . . . To the extent that Spencer's (or Starwalt's) questions about Plaintiff's or his subordinates' retirement dates might be considered probative of some age-based animus, those questions alone are insufficient to raise a genuine question of material fact."). Here, Arnold fails to cite any case where a court has found that a question about seniority was evidence of discriminatory animus.

Arnold cites to – and overblows the significance of – certain other evidence in the record in an effort to show pretext. For example, Arnold points to the fact that the HR representative, Tirado, questioned the message it would send to offer a separation

package to a poor performer, and that leadership decided instead to "focus on performance." (Dkt. 18, Appellant Br. at 8-9.) These facts have nothing to do with Arnold's age, nor do they imply pretext. Arnold essentially asks this Court to interpret the neutral "focus on performance" remark as suggesting there must have been some scheme to "falsely" focus on Arnold's performance. However, no such word was used or plausibly implied. Clearly, United was already focused on Arnold's performance – it's the very reason meetings were being held to discuss it and that a PIP was ultimately issued to Arnold in the hopes of correcting her performance deficiencies. Respectfully, Arnold's attempt to imply a sinister motive from routine performance management is made up out of whole cloth.

Further, Arnold attempts to show pretext by claiming that Tirado tried "to avoid creating a paper trail" with respect to certain emails about Arnold. (*Id.* at 8.) However, this is not what Tirado said. Rather, Tirado suggested at one point that matters be discussed over the phone because based on her "best practices, it's more efficient and effective to communicate live through a discussion." (Tirado Dep., p. 30.) When asked if this was also a way to hide discussions that you're having about an employee, Tirado replied, "I can't answer that. That's not my practice." (*Id.* p. 38.) In any event, Arnold again asks this Court to leap to the conclusion that Tirado must have wanted to talk live to avoid creating evidence of *age discrimination*. Such a leap finds no support in the evidentiary record.[9] Accordingly, Arnold fails to demonstrate pretext, and United was properly granted summary judgment for this reason as well.

---

[9] Arnold also points to her internal complaints around getting a better seating location after the reorganization, further away from Jones. While she did raise that issue and was moved

Finally, to establish a disparate treatment claim under the ADEA, a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged employment action." *Gross v. FBL Fin'l Servs., Inc.*, 557 U.S. 167, 176 (2009). "[I]t's not enough to show that age was a motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred." *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009).[10] The record is devoid of any evidence that Arnold's age was the "but-for" cause of any alleged adverse employment actions.

## II.    The District Court Properly Granted Summary Judgment to United on Arnold's Age-Based Retaliation Claims.

Arnold did not suffer an actionable adverse employment action, despite her unhappiness with the reassignment of the few remaining Core4 tasks and her placement on the PIP. Arnold also cannot rely on her sex-based complaints as protected activity for her age-based claims, and she has failed to demonstrate causation.

### A.    Arnold Cannot Rely on her Sexual Harassment Complaint as Statutorily Protected Activity.

To establish a retaliation claim, Arnold must show evidence of: "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a

---

further away from Jones, this activity has nothing to do with Arnold's age and does not support her age-based discrimination or retaliation claims.

[10] Arnold's "claims for age discrimination, harassment and retaliation under the IHRA are analyzed under the same standards as used for … ADEA claims…." *Walker v. City of Markham*, 2023 WL 3918965, *4 (N.D. Ill. June 9, 2023). Thus, the discussion of Arnold's ADEA claims applies equally to her IHRA claims.

causal connection between the two." *Skiba*, 884 F.3d at 718 (7th Cir. 2018). Further, for Arnold's complaints to constitute protected activity, they must include an objection to discrimination on the basis of age. *Smith v. Lafayette Bank & Tr. Co.*, 674 F.3d 655, 658 (7th Cir. 2012) (citing 29 U.S.C. § 623). General complaints that do not include objections to discrimination based on Arnold's age do not constitute protected activity under the ADEA. *Id.*

Arnold asserts that the District Court should have analyzed her retaliation claim under the IHRA, as well as the ADEA, thus allowing the Court to consider protected activities related to sex discrimination. (Dkt. 18, Appellant Br. at 30.) Arnold's assertion fails on several fronts. First, Arnold's claims in this case are age-based claims only, including her IHRA claims, which the District Court did analyze. The very first sentence of Arnold's Complaint makes this clear: *"This is an action for age discrimination and retaliation* under the [IHRA] and [ADEA]." (R. 44-1, Arnold Dep., Ex. 29, p.1.) (emphasis added). Count III of Arnold's Complaint ("Retaliation under IHRA") alleges that "[Arnold] engaged in protected activity under IHRA when she complained about *age* discrimination and harassment." (*Id.* ¶ 43) (emphasis added).[11] Arnold never alleges in her Complaint that her retaliation claims were based on sex-based protected activity.

---

[11] The District Court properly recognized that "Arnold brings claims for age discrimination and retaliation under the ADEA and IHRA…" and stated "[b]ecause the legal standards are the same, if Arnold ultimately fails to prove her ADEA claims, her IHRA claims will necessarily fail as well; if she prevails on her ADEA claims, so too will she prevail on her IHRA theory." (Op., S.A. 00015-16.)

Nor did Arnold argue in her response to United's Motion for Summary Judgment that the District Court should consider Arnold's sexual harassment complaint as the basis for retaliation under the IHRA. Instead, presumably because of the weaknesses in her attempt to show age-based protected activity, Arnold attempts to repackage her allegations into an IHRA sex-based retaliation claim for the first time in this Court. Arnold has therefore waived this argument. *See Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 936 (7th Cir. 2017) ("A party has waived the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms.").

Arnold testified that her retaliation claim is premised on two internal complaints – her 2017 age discrimination complaint and her 2018 sexual harassment complaint. (R. 44, Def. SOF at ¶¶ 12, 58-61.) Yet Arnold's complaints about Jones did not concern age discrimination, and therefore, as the District Court held, they "cannot support her retaliation claims." (Op. S.A. 00024.) Further, Arnold now appears to concede that she cannot establish a causal link between her 2017 age discrimination complaint and any alleged adverse employment actions, as she now points to "her complaints about her transfer and the accompanying harms" as being protected activities supporting her ADEA retaliation claim. (Dkt. 18, Appellant Br. at 31.) Specifically, Arnold contends that her complaints included October 10 and October 24, 2019 emails she sent to Garrison Phillips primarily concerned with Arnold being asked to sit on the same floor and in the same area as her team; and an October 24, 2019 email she

sent to Brett Hart alleging she was retaliated against for her participation in an internal investigation. (*Id.* p. 8.)

The three "complaints" relied upon by Arnold cannot establish that Arnold engaged in age-based protected activity under the ADEA or IHRA, as she did not claim that any allegedly adverse action, including her transfer, occurred *because of* her age. In Arnold's October 10th email to Phillips, Arnold makes clear that her "immediate concern" was whether she was required to "physically move from my current location on the 17th floor back to the 13th floor and *within feet of my accused?*" (R. 44-1 at 78.) Indeed, Arnold focuses on her participation in the investigation against Jones, writing that she reported Jones "to protect myself and the other girls on our team." Arnold never mentioned age in her October 10th email.

In her October 24th email to Phillips, Arnold again complained mainly about her seating arrangement, a complaint patently related to her sex-based complaints about Jones. Although Arnold complains about her "project [being] given to others," "an enormous volume of production type work," and "less high profile, higher exposure projects," she again never invokes age or otherwise attributes her treatment to age. (R. 44-1 at 76.)

And in her October 24, 2019 email to Hart, Arnold again attributes the alleged adverse employment actions to retaliation over her complaints against Jones and participation in the attendant investigation. (R. 47-14 at 2-4.) Arnold will undoubtedly point to her self-identification in the email as "an employee of a protected class (over 40)," or note that she described the Core4 project as being given

to "younger and lower-level employees" to assert that the October 24th email to Hart qualifies as protected activity under the ADEA. *Id*. Yet a report of misconduct must concern discrimination on the basis of age to constitute protected activity under the ADEA. *Howard v. Indianapolis Pub. Sch.*, 727 F. App'x 198, 202 (7th Cir. 2018). Specifically, Arnold emailed Hart on October 24th, "I'm part of a team but am not able to enjoy the benefits of that team *because I participated in an internal investigation*." (R. 47-14 at 2.) (emphasis added.) One of the benefits Arnold alleges in the email that she is not able to enjoy is the Core4 project, but it is clear from the email that Arnold is attributing the alleged loss of the Core4 project to her complaint against Jones and her participation in the Jones investigation.

Although Arnold identifies herself as an employee over 40 years old, she never complains in the email that she is experiencing retaliation *because of* her age. On the contrary, Arnold unequivocally asserts that she believes she is being treated poorly "because I participated in an internal investigation [into Jones]." (R. 47-14 at 2.) Mirroring her reference to her complaints about Jones in her October 10th email to Phillips, Arnold states that she reported "[Jones'] inappropriate behavior that happened to me and in the best interest of the young girls on my team." (R. 47-14 at 1.) Arnold's mention of her age is an aside at best, and the email evinces that she attributes any perceived retaliation to her sexual harassment accusations against Jones. As Arnold wrote in the October 24 email, "[a]lthough the claim [against Jones] was *unable to be substantiated*, the retaliation, discrimination, and harassment that has immediately followed…has progressed to a toxic workplace, hostile work

environment and intolerable working conditions." Arnold never indicates that the alleged occurred because of her age, nor does she assert facts in the email to support such a conclusion by the reader. Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Therefore, the complaints on which Arnold attempts to rely are not age-based protected activity and cannot support her retaliation claims.

### B. Arnold's Retaliation Claim Cannot Survive Summary Judgment Because She Did Not Suffer Any Materially Adverse Action

To establish a retaliation claim, Arnold also must demonstrate that as a consequence of protected activity, she suffered some retaliatory action that was "materially adverse," meaning something that caused "significant harm." *Burlington N. & Santa Fe Ry Co. v. White,* 548 U.S. 53, 68 (2006). In *Muldrow*, *supra*, the Court rejected an argument that it "should import the same standard into the anti-discrimination provision at issue" because "*White* adopted the standard for reasons peculiar to the retaliation context." 601 U.S. at 357. Thus, Arnold's retaliation claim is governed by the more demanding standard of something "materially adverse" that causes "significant harm." *Id*.

As explained above, Arnold cannot establish that she suffered any adverse employment actions. At most, Arnold points to the fact that her PIP indicated that disciplinary action, up to and including termination, could result if she failed to meet PIP requirements, and that the PIP process created an "additional layer of constant

scrutiny [and] threats about deadlines [that] was very pervasive." (R.44-1 at 31.) Even taken as true, this does not establish that Arnold suffered any materially adverse actions that caused significant harm, particularly where part of Arnold's performance deficiencies were her failure to meet deadlines and need for structure around her work. *See Lauth,* 863 F.3d at 717 (negative performance reviews, a written warning and being placed on a PIP were not materially adverse "because Lauth cannot show that they resulted in a 'quantitative or qualitative change in the terms or conditions of employment.'") (cleaned up); *Bagwe v. Sedgwick Claims Mgmt Servs., Inc.*, 811 F.3d 866, 889 (7th Cir. 2016) (PIP did not have materially adverse consequences where it did not impact compensation and the "PIP provides a detailed list of concerns regarding Ms. Bagwe's performance."); *Cole v. Illinois*, 562 F.3d 812, 816-17 (7th Cir. 2009) (PIP was not materially adverse where it did not impact job benefits, required the plaintiff to submit daily and weekly schedules to her managers  to be more aware of her tone and become a better listener); and *Atanus*, 520 F.3d at 678 (letter of instruction and change in job title was not materially adverse where it did not change the plaintiff's work, geographic work location, or advancement opportunities).

### C. There is No Causal Link Between Arnold's 2017 Age-Discrimination Complaint and Any Allegedly Adverse Employment Action

While Arnold cannot rely on sex-based complaints to establish that she engaged in protected activity under the ADEA, neither party disputes that in 2017 Arnold lodged an internal complaint about age discrimination by employee Hawkins, and subsequently filed a  discrimination charge with the IDHR that she subsequently withdrew. (R. 44, Def. SOF ¶ 12.) Yet as the District Court properly found, "no

36

reasonable juror could conclude a causal connection exists between that complaint and any of the adverse actions" alleged. (Op. S.A. 00024.)

First, the passage of time between the 2017 complaint and the actions Arnold now calls retaliatory weigh against an inference of a retaliatory motive. An inference of retaliation can be weakened by "a lengthy time period between the protected activity and the alleged retaliation." *Alamo v. Bliss*, 864 F.3d 541, 556 (7th Cir. 2017) (internal citation omitted). If the best a plaintiff can do is allege that he engaged in protected activity and then, years later, the employer took an adverse action against him, the claim may not be permitted to proceed. *Id*. Here, Arnold inappropriately seeks to impute a retaliatory motive from her 2017 complaint to actions experienced in 2019.

Further weakening a causal inference, Hawkins was separated from United in 2018, and was therefore not involved in any disputed employment decision. (R. 44-1, Arnold Dep., Ex. 29, ¶ 15.) Arnold has also failed to elicit evidence that any decision maker knew of her complaints against Hawkins. While Arnold alleges that she told Millichap, Schall, and Patterson of her sexual harassment complaint against Jones (R. 46, Pl. Resp. to Def. SOF ¶ 14.), Arnold points to no record evidence that Millichap, Schall, Patterson, or Tirado knew of her 2017 age discrimination complaint. To demonstrate that a defendant was motivated to retaliate based on the plaintiff's protected activity, the plaintiff must produce evidence that the decision makers had actual knowledge of the protected activity. *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512 (7th Cir. 2021). Arnold has not met this burden, and thus cannot establish

a causal link between her statutorily protected 2017 age-discrimination complaint and (1) having an assignment reassigned to another employee; (2) receiving a negative performance review; or (3) being placed on a PIP.

Additionally, Arnold cannot show any causal link to any protected activity as she was plainly not meeting United's legitimate work expectations and was reasonably held accountable for poor performance. Arnold has not come close to showing that the incidents she points to would not have occurred "but for" any age-based protected activity. Thus, the District Court's grant of summary judgment on Arnold's retaliation claims should be affirmed.

## III. The District Court Properly Granted Summary Judgment to United on Arnold's Hostile Work Environment Claim

On appeal, Arnold seems to abandon her age-based hostile work environment claim and instead tries to rely on her sexual harassment complaint, which she cannot do. (Dkt. 18, Appellant Br. at 4, 30.) In any event, the conduct Arnold claims created a hostile work environment is not severe or pervasive enough to establish a hostile work environment. Therefore, the District Court's grant of summary judgment on Arnold's hostile work environment claim should be affirmed.

### A. To the Extent that Arnold is Still Raising an Age-Based Hostile Work Environment Claim, Arnold Failed to Show that any of the Alleged Harassment Was Based on Her Age or Age-Based Complaint.

Although the Seventh Circuit has "assumed, but never decided, that plaintiffs may bring hostile environment claims under the ADEA," the Circuit nevertheless uses a Title VII analysis for evaluating hostile work environment claims. *Tyburski v. City of Chicago*, 964 F.3d 590, 600 (7th Cir. 2020). For a plaintiff to prevail on a hostile work

environment claim, she must show that: "(1) she was subject to unwelcome harassment; (2) the harassment was based on her [age]; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Id.* (citing *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005)).

On appeal, Arnold is apparently abandoning her age-based hostile work environment claim, seeking to rely on her sexual harassment complaint. (*See* Dkt. 18, Appellant Br. at 4, framing the issue as follows: "III. Did the district court err in granting summary judgement on Arnold's hostile environment claim where a reasonable jury could find that United treated Arnold offensively because she reported sexual harassment?") For the first time, Arnold attempts to raise a gender-based hostile work environment claim, alleging that she faced harassment "because of reporting sexual harassment." (*Id.*, p. 34.) Arnold waived this argument by not raising it with the District Court, *see Nischan supra,* but such an argument fails in any event. As discussed above, Arnold has no gender-based hostile work environment claim as she asserted only age-based claims in her Complaint. *See Section II. A. supra.* Further, there is no evidence of any gender-based animus toward Arnold.

In addition, to the extent Arnold is still trying to bring an age-based hostile work environment claim, it fails. In support of an age-based animus, Arnold, at most, complains of one remark by an HR employee, who allegedly asked Arnold about her seniority when meeting her for the first time and shared that "she had only been with the company for a short time." (R. 44, Def. SOF at ¶ 69.) However, isolated remarks

are not sufficient to create a hostile work environment. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) ("Simple teasing, offhand comments, and isolated incidents (unless extremely serious)" insufficient to create a hostile work environment); *see also Pierce v. Illinois Dep't of Human Servs.,* 355 Fed. Appx. 28, 31-32 (7th Cir. 2009) (these types of "isolated incidents," remarks or jokes not sufficient to establish severe or pervasive harassment). And as noted, this Court has held that inquiries concerning seniority or an employee's retirement plans is not, in and of itself, evidence of age bias. The single stray comment is not evidence of age bias and Arnold has not pointed to any other record evidence to establish any age-based discriminatory animus.

## B.    The Conduct Arnold Complains About Did Not Rise to the Level of An Abusive Work Environment.

A hostile work environment is one that is both objectively and subjectively offensive. *Faragher*, 524 U.S. at 787. In evaluating whether an environment is hostile, several circumstances are considered, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work performance. *Id*.

Arnold complains that she suffered a hostile work environment because she was asked to sit on the same floor and near her team, albeit allegedly near to Jones and because she was put on a PIP with allegedly increased supervision and imposed deadlines. (Dkt. 18, Appellant Br. at 36.) Even if accepted as true, these incidents do not rise to the level of an actionable severe or pervasive hostile work environment. First, when Arnold complained of being asked to sit with the rest of her team because

of the proximity to Jones, United addressed Arnold's concerns and offered her an alternative seating arrangement, which Arnold acknowledged in her October 24, 2019 email to Phillips. (R. 44-1 at 76.) ("I do appreciate that I was able to get a better seating solution.").

Additionally, as explained above, Arnold was placed on a PIP because she failed to meet United's legitimate performance expectations. Arnold complains that under the PIP, she was subject to "micromanagement of her, imposed additional…deadlines, and inundated…with even more work." (Dkt. 18, Appellant Br. at 36) No reasonable jury could conclude that this type of routine performance management amounts to a hostile work environment. *Hambrick v. Kijakazi*, 79 F.4th 835, 843 (7th Cir. 2023) ("heavy workload, management's high expectations, and routine workplace discipline" and "weekly touch point meetings" not enough to support a hostile work environment claim). Arnold has also offered no record evidence to link the PIP or any related performance management allegations to a discriminatory animus. *See, e.g., Duniya v. Power,* 2023 WL 2755132, *4 (N.D. Ill. April 3, 2023) (complaints of "being assigned additional duties, having a temporary assignment cancelled, having other duties taken away from him, being verbally admonished during a meeting, receiving poor marks on his evaluation, having overtime payment requests denied, being bullied, and receiving a suspension" are "general workplace complaints [that] do not allow the Court to infer a reasonable person would find his work environment hostile and instead appear to merely reflect Duniya's displeasure with his supervisors' management of his work."). Accordingly,

the District Court properly granted summary judgment to United on the hostile work environment claim.

## IV. The District Court Properly Dismissed Arnold's Constructive Discharge Claim Because Arnold Failed to Exhaust her Administrative Remedies and Such Claim Fails in any Event.

For multiple reasons, Arnold failed to establish her constructive discharge claim before the District Court and similarly fails before this Court.

### A. Arnold Waived any Argument that her Constructive Discharge Claim was Exhausted.

In its summary judgment motion, United argued that Arnold's constructive discharge claim was beyond the scope of the IDHR Charge she filed months before she retired and thus, Arnold failed to exhaust her administrative remedies. (R. 43, Def. SJ Br., at 14.) Arnold failed to respond to United's exhaustion argument and accordingly, the District Court correctly held that Arnold waived any argument that she had administratively exhausted a constructive discharge claim. (Op., S.A. 00028.) Arnold now asks this Court to overlook her waiver, claiming that her case involves the unique facts required to excuse waiver. It plainly does not.

A "party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. Arguments raised for the first time on appeal are deemed waived." *See Mahran v. Advocate Christ Med. Ctr,* 12 F.4th 708, 713 (7th Cir. 2021) (cleaned up); *see, e.g., Citizens for Appropriate Rural Roads v. Foxx,* 815 F.3d 1068, 1078 (7th Cir. 2016) (noting that failure to respond to arguments in summary judgment motion results in waiver). Arnold nonetheless asks this Court to consider her exhaustion argument, contending

she inadvertently failed to respond to United's argument, and attempts to rely on *Bourgeois v. Watson,* 977 F.3d 620 (7th Cir. 2020), which involved a federal prisoner's habeas corpus petition challenging his death sentence. In *Bourgeois,* this Court stated that a court's "ability to review for plain error in civil cases is severely constricted as a civil litigant should be bound by his counsel's action. Plain error review is available in civil cases only in the rare situation where a party can demonstrate that: (1) exceptional circumstances exist; (2) substantial rights are affected; and (3) a miscarriage of justice will occur if plain error review is not applied." 977 F.3d at 629 (cleaned up).

*Bourgeois* is easily distinguishable for multiple reasons. First, the *Bourgeois* court held that the government had not waived one of its arguments by addressing two claims together because Bourgeois himself referred to the two claims collectively. *Id.* at 631. The *Bourgeois* court also found that "the government's failure to respond separately to the [Federal Death Penalty Act] claim . . . did not result in forfeiture," because "Bourgeois himself, through his undifferentiated presentation of the claims, was just as much to blame for that silence." *Id.* No such confusion is present here (nor does Arnold suggest any), as United's exhaustion argument was clearly and distinctively presented in its summary judgment motion. (R. 43, Def. SJ Br., at 14-15).

Arnold argues that her "substantial right to work" hinges on being able to make this exhaustion argument and a "miscarriage of justice" would occur if her argument was not considered. (Dkt. 18, Appellant Br. at 38-39.) These reasons are a far cry from

the type of "exceptional circumstances" under *Bourgeois* that warrant forgiveness of a party's forfeiture of an issue, which "include when a forfeited ground is 'founded on concerns broader than those of the parties.'" 977 F.3d at 631 (cleaned up). Here, unlike in *Bourgeois,* where the Court found that "broader interests" were at stake, such as the "importance of finality" where "postconviction proceedings have tied up a criminal conviction for more than a dozen years," Arnold offers nothing more than her contention that if she is not allowed to address her exhaustion argument, her constructive discharge claims fails. *See id* at 632. These reasons do not reflect any "broader interests" and are insufficient. Arnold is barred from making a constructive discharge claim on appeal and such a claim should be dismissed on this basis alone.

### B.     Arnold Failed to Exhaust her Administrative Remedies with Respect to a Constructive Discharge Claim.

The District Court also properly held that even if Arnold's exhaustion argument was considered (which United maintains it should not be), she failed to exhaust her administrative remedies with respect to a constructive discharge claim. (Op., S.A. 00029.) It is undisputed that Arnold filed her charge with the IDHR prior to her resignation and never filed a subsequent or amended charge. *See Shuler v. McCarthy*, 2019 WL 13171974, at *3 (C.D. Ill. 2019) (collecting cases) ("[D]istrict courts have routinely found constructive discharge claims unexhausted if the EEOC charge was filed prior to the plaintiff's resignation and the plaintiff did not amend her charge or otherwise bring the resignation to the EEOC's attention during the investigation process.").

44

For the first time, Arnold asks this Court to take judicial notice of the IDHR's Notice of Dismissal and her complainant questionnaire, attaching a few pages of each to her brief. (S.A. 00034-38.) Arnold asserts that these documents reflect that she gave notice to the IDHR of her constructive discharge claim. (Dkt. 18, Appellant Br. at 40.) Because Arnold attempts to rely on documents that were never submitted to the District Court, she has waived that argument. *See Anderson v. Street,* 104 F.4th 646 (7th Cir. 2024) (cleaned up) ("By not presenting this argument to the district court and not citing evidence to substantiate the claim, she has waived it.").

Even if this Court could consider these documents submitted on appeal, they are insufficient for the Court to take judicial notice that Arnold notified the IDHR that she was claiming constructive discharge. The IDHR Notice of Dismissal simply states: "Complainant stated that she ultimately retired." (S.A. 00034.) Her questionnaire arguably reflects multiple reasons for her "involuntary" retirement but she ultimately explained that she was "involuntarily retiring" because she believed there would be "additional cuts through September due [to] COVID impact on the airline industry" and if she survived being fired, she believed she would have "been furloughed/fired" for performance reasons. (S.A. 00038.) This reflects that she did not retire because of the work environment but because she feared she would be terminated due to cuts related to COVID. This is insufficient to show that Arnold brought a constructive discharge claim to the attention of the IDHR.

Arnold also argues that her constructive discharge claim was within the scope of the Charge she filed with the IDHR alleging age discrimination, retaliation and

hostile work environment and that the District Court incorrectly based its dismissal of her constructive discharge claim on the fact that Arnold did not amend her administrative charge. (Dkt. 18, Appellant Br. at 41.) While it's true that a claim may be exhausted where it is reasonably related to allegations in an IDHR charge and can be expected to grow out of the agency investigation, there was no such argument or evidence of this before the District Court. Nowhere in Arnold's IDHR charge did she mention that her employment with United had ended (as it had not at that point), let alone that it allegedly ended as a result of a constructive discharge. In finding the claim unexhausted, the District Court accurately noted that Arnold filed her charge prior to her resignation and did not amend it. (Op., S.A. 00029.)

### C.    Arnold's Claim of Constructive Discharge Would not Survive Summary Judgment Even if it Had Been Exhausted.

The lower court never had to reach the issue (nor does this Court) of whether Arnold's resignation was a constructive discharge. But even if Arnold had preserved this claim, the alleged incidents on which she bases her claim do not rise to the necessary level, and the District Court properly found that "Arnold's claim of constructive discharge would not survive summary judgment." (Op., S.A.00029.)

First, as noted above, the alleged conduct Arnold points to, even if true, falls far short of being more abusive and "even more egregious than the high standard for hostile work environment." *See Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635, 648 (7th Cir. 2023); *Gordon v. DeJoy,* 2023 WL 4762595, *4 (internal citation omitted) ("A plaintiff asserting that she resigned (here, forcibly retired) due to alleged discriminatory harassment must 'show working conditions even more egregious than

that required for a hostile work environment claim.'") Therefore, the District Court properly held that Arnold did not "point to evidence from which a reasonable jury could find the existence of such treatment." (Op. S.A. 00029.)

Arnold also argues that her constructive discharge claim can survive summary judgment because a reasonable jury could find that her termination was imminent and inevitable. (Dkt. 18, Appellant Br. at 42.) "When an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *EEOC v. Univ. of Chicago Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002). This form of constructive discharge "does not eliminate the need for the plaintiff to show that his working conditions had become intolerable." *Id.; Kinney*, 76 F.4th at 648.

Arnold has not shown that her working conditions, from the standpoint of a reasonable employee, were intolerable. *See Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (finding that "[a] reasonable person in Chapin's position would not have felt that he had no choice but to resign."). Arnold asserts that she was informed that failure to successfully meet the terms of the PIP could lead to termination. However, "[a] working condition does not become intolerable or unbearable merely because a 'prospect of discharge lurks in the background.'" *Id.* (cleaned up); *see Wright v. Ill. Dep't of Children. and Family Servs.*, 798 F.3d 513, 531 (7th Cir. 2015) ("That Ms. Wright *may* have been discharged at the conclusion of the

disciplinary proceeding does not amount to a constructive discharge.") (emphasis in original).

The incidents alleged in this case do not rise to the level necessary for a reasonable employee in Arnold's position to believe that the handwriting was on the wall that had she not resigned, her termination was imminent and inevitable. Arnold undisputedly opted to resign before the final PIP meeting and no one told her she was terminated or going to be terminated before she resigned. (R. 44, Def. SOF ¶¶ 54-56; R. 46, Pl. Resp. to Def. SOF ¶ 53-55.) Arnold points to her allegations that she received a lower performance evaluation in 2019 than she had in prior years, that she was accused of not following directives and her performance was "scrutinized," and that when trying to resolve the seating issue, United asked her to consider whether she wanted to work at the company long term. (Dkt. 18, Appellant Br. at 43.) These allegations are vastly different than the ones in *Univ. of Chicago Hosps.,* a case Arnold relies upon, where the court looked to the employer's actions and found "*most significantly,* when [the plaintiff] arrived at work, her belongings were packed and her office was being used for storage." *See Univ. of Chicago Hosps.,* 276 F.3d at 326 (emphasis added). Further, Arnold's reliance on *Huber v. Fox Valley Park District* is misplaced as *Huber* was decided on a motion to dismiss and the court held only that the plaintiff's constructive discharge claim, at that stage, survived dismissal. 2021 WL 1546425, *5 (N.D. Ill. April 20, 2021) ("Whether Huber can adduce the imminence and inevitability of her termination remains a question,…). Here, the alleged incidents are not those that would support a conclusion that a reasonable employee

48

in Arnold's position would believe that United's actions indicated she would be terminated imminently and inevitably.

Nor does the fact that Arnold had been on a PIP, where the final meeting to discuss the results of the PIP had not even occurred, lead to a conclusion that she would have been discharged at her final PIP meeting. As the District Court correctly noted, courts are "particularly loath to engage in such guesswork in the constructive discharge context, where we recognize that the burden remains on the employee to show why [she] would have had to quit immediately." *Ziccarelli v. Dart*, 35 F.4th 1079, 1092 (7th Cir. 2022) (cleaned up).

Accordingly, even if her constructive discharge claim was exhausted, summary judgment would be warranted.

## **CONCLUSION**

Based on the foregoing, Defendant-Appellee United respectfully requests that this Court deny the appeal and affirm the judgment of the District Court in all respects.

Dated:  January 30, 2025                    Respectfully submitted,

                                            /s/ Alan S. King

                                            Alan S. King (ARDC #06198223)
                                            Noreen Cull (ARDC #06229417)
                                            Riley Safer Holmes & Cancila LLP
                                            1 S. Dearborn Street, Suite 2200
                                            Chicago, IL 60603
                                            Telephone:   312.471.8700
                                            Facsimile:   312.471.8701

                                            *Counsel for Defendant-Appellee*
                                            *United Airlines, Inc.*

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding parts of the document exempted by Fed. R. App. P. 32(f), this document contains 13,562 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as modified by Cir. R. 32(b), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365, Version 2307, in Century Schoolbook, 12-point font.


Dated:  January 30, 2025             Respectfully submitted,

                                     /s/ Alan S. King
                                     _____

                                     Alan S. King
                                     Noreen Cull
                                     Riley Safer Holmes & Cancila LLP
                                     1 S. Dearborn Street, Suite 2200
                                     Chicago, IL 60603
                                     Telephone:   312.471.8700
                                     Facsimile:    312.471.8701

                                     *Counsel for Defendant-Appellee*
                                     *United Airlines, Inc.*

## CERTIFICATE OF SERVICE

I, Noreen Cull, an attorney, hereby certify that on January 30, 2025, a copy of the foregoing document was electronically filed using the Court's CM/ECF system, which will send email notification of the filing to all participants in the case that are registered CM/ECF users. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Noreen Cull