No. 24-2179

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

**MARY ANN ARNOLD,**

Plaintiff-Appellant

v.

**UNITED AIRLINES, INC.,**

Defendant-Appellee.

On Appeal from the United States District Court
for the Northern District of Illinois
Case No. 1:22-cv-00405
The Honorable Judge Charles P. Kocoras

**REPLY BRIEF OF PLAINTIFF-APPELLANT MARY ANN ARNOLD**

Danielle Hamilton
Kana Turley*
Jacob Allen*
Anirudh Koka*
Northwestern University Pritzker School of Law
Carter G. Phillips Center for Supreme Court & Appellate Advocacy
375 E. Chicago Avenue, 8th Floor Chicago, IL 60611
(312) 503-1486
danielle.hamilton@law.northwestern.edu

*Law student appearing pursuant to Illinois Supreme Court Rule 711

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

Introduction…………………………………………………………..………………...……1

Argument…………………………………………………………….………………..2

I.  Summary judgment on Arnold's age discrimination claim was in error…………………………………………………...………………..2

    A. A reasonable jury could find Arnold's job transfer and placement on a PIP constituted adverse employment actions under Muldrow…………2

        1. A reasonable jury could find that Arnold suffered some harm from her job transfer, thus satisfying Muldrow's standard for adverse employment actions…………………………………..…...…………….2

        2. A reasonable jury could find that Arnold's placement on a PIP was an adverse employment action……………………..……………………5

    B. A reasonable jury could find that similarly situated, younger employees were treated better than Arnold………………………..………………7

        1. A.C. and T.S………………………………………………………7

        2. J.P…………………………………………………………………9

    C. A genuine issue of material fact remains whether Arnold was meeting United's legitimate work expectations and whether United's justifications were pretext for age discrimination…………..….………..………………………………11

II.  The district court should not have granted summary judgment on Arnold's retaliation claim………………………………………………………14

    A. Arnold's sex-based protected activities are a valid basis for her retaliation claim under the Illinois Human Rights Act…......…..……..14

    B. A reasonable jury could find that Arnold's negative review and placement on a PIP are materially adverse harms causally linked to Arnold's protected activities……………………………..………………...16

III.  The district court erred when it granted summary judgment on Arnold's hostile work environment claim……………………..………………….......…17

A. Arnold properly raised a hostile work environment claim based on her protected status as a sexual harassment claimant………..………...17

B. United created a pervasively offensive work environment.................18

IV. Dismissal of Arnold's constructive discharge claim was in error because the claim was exhausted, and termination was inevitable…....……...……..…….20

A. This Court should consider Arnold's administrative exhaustion argument……………………………………………..….………….20

B. Arnold properly exhausted her constructive discharge claim…...........22

C. A reasonable jury could find that Arnold's working conditions were intolerable and her departure inevitable……………………...……24

Conclusion……………………………………………...……………....……25

# TABLE OF AUTHORITIES

## Cases

*Atanus v. Perry*, 520 F.3d 662 (7th Cir. 2008) ...........................................................5, 6

*Berry v. Chicago Transit Auth.*, 618 F.3d 688 (7th Cir. 2010).....................................9

*Boss v. Castro*, 816 F.3d 910 (7th Cir. 2016) ...........................................................5, 6

*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).............16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................1

*Chambers v. D.C.*, 35 F.4th 870 (D.C. Cir. 2022) ........................................4

*Cole v. Grp. Health Plan, Inc.*,105 F.4th 1110 (8th Cir. 2024) ................................3

*Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012)........................................7,8,9,17

*Doe v. Oberweis Dairy,* 456 F.3d 704 (7th Cir. 2006) ...................................21

*Dunlevy v. Langfelder*, 52 F.4th 349 (7th Cir. 2022)..............................................7, 11

*E.E.O.C. v. Univ. of Chicago Hosps.*, 276 F.3d 326 (7th Cir. 2002)...........................24

*Ezell v. Potter*, 400 F.3d 1041 (7th Cir. 2005)...............................................23

*Ferrell v. Leake & Watts Servs., Inc.*, 83 F. App'x 342 (2d Cir. 2003) ......................14

*Filar v. Bd. of Educ.*, 526 F.3d 1054 (7th Cir. 2008) .....................................7

*Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481 (7th Cir. 2015).......................17

*Hambrick v. Kijakazi,* 79 F.4ᵗʰ , 79 F.4th835 (7th Cir. 2023)....................................19

*Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887 (7th Cir. 1997)....................................10

*Humphries v. CBOCS W., Inc.*, 474 F.3d 387 (7th Cir. 2007)......................................7

*In re Lightfoot*, 217 F.3d 914 (7th Cir. 2000)..........................................20

*Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887 (7th Cir. 2018) ..................8

*Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672 (7th Cir. 1997) ...................... 10

*Milczak v. Gen. Motors, LLC*, 102 F.4th 772 (6th Cir. 2024) ................................... 4, 5

**Muldrow v. City of St. Louis, Missouri, 601 U.S. 346(2024)............. 2, 3, 4, 5, 6, 7**

*Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996) ...................................... 22

*Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) ................................. 9

*Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270 (3d Cir. 2024) ....................................... 3

*Robbins v. Bentsen*, 41 F.3d 1195 (7th Cir. 1994) ..................................... 21

*Smith v. Rowe*, 761 F.2d 360 (7th Cir. 1985).................................................. 21

*Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640 (7th Cir. 2002).......... 9

*Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335 (7th Cir. 2024) ............................... 3

*U.S. v. Misc. Firearms, Explosives, Destructive Devices and Ammunition*, 376 F.3d
   709 (7th Cir. 2004)................................................................................. 18

**Statutes**

14 U.S.C. § 2000e 2(a)(1).............................................................................. 3

## INTRODUCTION

Contrary to United's assertions and as explained below, under the proper summary judgment standard, Arnold has raised genuine disputes regarding several material facts, which preclude summary judgment on her age discrimination, retaliation, hostile work environment, and constructive discharge claims. Throughout United's response brief, they consistently ignore the well-established standard for summary judgment, which requires the record to be construed in the light most favorable to Arnold and granting all reasonable inferences in her favor. United also ignores the well-established law that at the summary-judgment stage, Arnold is not required to prove her case—she need only show "a genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). United's argument that Arnold has not raised a single genuine dispute over any material fact is, in several instances, not supported in the law or the record and premised on their skewing the record in the light most favorable to them and mischaracterizing Arnold's arguments. Accordingly, this Court should reverse the district court's grant of summary judgment in United's favor, and Arnold's claims should proceed to trial.

## ARGUMENT

**I.    Summary judgment on Arnold's age discrimination claim was in error.**

**A.  A reasonable jury could find Arnold's job transfer and placement on a PIP constituted adverse employment actions under *Muldrow*.**

United argues that Arnold's transfer and placement on a PIP do not constitute adverse employment actions even under the "some harm" standard articulated in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024), and that somehow *Muldrow* applies only to "forced transfers" and not to involuntary transfers that are part of reorganizations. Br. at 15. Because Arnold's involuntary transfer caused her at least some harm, this Court should reject United's arguments.

> 1.  A reasonable jury could find that Arnold suffered some harm from her job transfer, thus satisfying *Muldrow*'s standard for adverse employment actions.

United attempts to distinguish Arnold's case from *Muldrow* by arguing that she was not forcibly transferred—even though she was involuntarily transferred—and that the impacts of her transfer were not as severe as those in *Muldrow*. United's arguments fail for two reasons.

First, the specific categorization of Arnold's involuntary role change—whether a transfer, internal reorganization, or reassignment—has no bearing on *Muldrow*'s applicability to Arnold's case. In *Muldrow*, the Supreme Court anchored its holding—that a transferee need only show "some harm" to make out an employment discrimination claim—in Title VII's general command that no

employer "discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 601 U.S. 346, 354–55 (2024); 14 U.S.C. § 2000e–2(a)(1).

Accordingly, no circuit court, including this Court, has read *Muldrow* the way United urges. Instead, appellate courts have applied *Muldrow* to various adverse employment actions, including involuntary transfers, delayed workplace training, and denied accommodations. *See, e.g., Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335 (7th Cir. 2024) (reversing the grant of a motion to dismiss because, under *Muldrow*, postponed training, denied vacation requests, and changed shifts could constitute "some harm"); *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270 (3d Cir. 2024) (finding denying workplace accommodations for a pregnant employee could constitute an adverse employment action); *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024) (reversing the grant of a motion to dismiss because, after *Muldrow*, the denial of religious accommodations could constitute an adverse employment action). Similarly, *Muldrow* does not state that an adverse action cannot be found if more than one employee is transferred at the same time. United's attempt to distinguish Arnold's case due to semantics fails, and the district court's failure to apply *Muldrow* to Arnold's case was an error.

Second, United's assertion that the impacts of Arnold's job transfer were not severe enough to constitute an adverse employment action is premised on a view of the record in the light most favorable to United—not Arnold, as is required at the summary judgment stage. Viewing the record in the light most favorable to Arnold,

a reasonable jury could find that Arnold suffered at least "some harm" when she was transferred. *Muldrow*, 601 U.S. at 355. The record reflects that Arnold was transferred to a role with significantly less visibility and partner interaction, harming her upward mobility at United. R.46 at 31; *see Muldrow*, 601 U.S. at 359 (finding that plaintiff was harmed by her transfer to a less visible, more administrative role). She was removed from Core4 despite her significant work on the project, which confused and humiliated her. R.44-1 at 34. She experienced a significant increase of menial assignments to her workload. *Id.* at 76, 170; R.47 at 8–9. In addition, she was forced to sit near her former supervisor, whom she had reported for sexual harassment the previous year. R.44 at 35, 79. United is free to contend that these harms were not severe at trial, but they cannot show that, as a matter of law, no jury could find Arnold suffered "some harm." *Muldrow*, 601 U.S. at 355; *see also Chambers v. D.C.*, 35 F.4th 870, 874 (D.C. Cir. 2022) (finding that "Title VII prohibits all discrimination with respect to terms and conditions of employment" with "no distinction between 'economic' and 'non-economic' discrimination or 'tangible' and 'intangible' discrimination"). Accordingly, summary judgment on this material issue was improper and should be reversed.

United also attempts to minimize Arnold's significant workplace harms compared to those in the cases that Arnold relies on, namely *Muldrow* and *Milczak v. Gen. Motors, LLC*, 102 F.4th 772 (6th Cir. 2024). However, *Muldrow* did not set a floor for the adverse action inquiry, and United provides no authority to suggest otherwise. Accordingly, the *Milczak* Court, applying *Muldrow*, found inadequate

training, inability to make overtime pay, and changes in working hours could constitute adverse employment actions. 102 F.4th at 787. Because *Muldrow* has significantly lowered the bar for what constitutes an adverse employment action, whether Arnold meets that bar is a genuine issue of material fact that a jury should decide.

      2.  A reasonable jury could find that Arnold's placement on a PIP was an adverse employment action.

United argues that Arnold's PIP was not an adverse employment action under *Muldrow* because it did not change her job responsibilities and was not sufficiently onerous. Br. at 19. However, Arnold is not required to show a change in job responsibilities, and there are facts from which a jury could conclude that the new job responsibilities were onerous, if not impossible, to meet.

United relies on two Seventh Circuit cases to assert that Arnold's placement on a PIP was not an adverse employment action. Br. at 19 (citing *Atanus v. Perry*, 520 F.3d 662 (7th Cir. 2008) and *Boss v. Castro*, 816 F.3d 910 (7th Cir. 2016)). This reliance is misplaced, as United commits the same error as the district court— adhering to cases that are no longer good law after *Muldrow*. Both cases, decided before *Muldrow*, use the materiality standard that the Supreme Court admonished in *Muldrow*. *See Atanus*, 520 F.3d at 677 ("We focus on whether Ms. Atanus has suffered a materially adverse employment action . . ."); *Boss*, 816 F.3d at 917 ("[A] materially adverse employment action is one which visits upon a plaintiff a significant change in employment status.").

Even if the pre-*Muldrow* standard relied on by United did apply, the onerous nature of Arnold's PIP distinguishes it from the PIPs in *Atanus* and *Boss*. In *Atanus*, as United even admits, the improvement plan required no additional work or change to job responsibilities. 520 F.3d at 675; *see* United Br. at 19. In *Boss*, the plaintiff's PIP removed a single work-from-home day and asked him to substantiate his time off. 816 F.3d at 918.

By contrast, Arnold's PIP entailed additional assignments, targeted public criticism, and diminished professional advancement, which constitute adverse actions both pre- and post-*Muldrow*. Arnold's PIP required her to complete menial and time-consuming tasks like finding and attending introductory training for new employees, creating and updating a large project tracker spreadsheet, and attending superfluous and numerous meetings with supervisors, which took away valuable time from finishing her work. R. 44-1 at 23–28. On top of these menial assignments, United also repeatedly publicly humiliated Arnold. Arnold's supervisors repeatedly and publicly disparaged Arnold's work to business leaders who had praised Arnold's work product. *See id.* at 38. United rejected Arnold's requests for coaching and guidance, which, combined with the disparaging comments to business leaders, diminished Arnold's ability to seek other opportunities within United or salvage the professional reputation she had built over twenty-six years with the company. *See id.* at 20, 171.

At bottom, the record viewed in the light most favorable to Arnold fits squarely within the expanded scope of adverse actions under *Muldrow*. Because a reasonable jury could find, under *Muldrow*, that Arnold's involuntary job transfer

and placement on a PIP constituted adverse employment actions, this Court should reverse.

### B. A reasonable jury could find that similarly situated, younger employees were treated better than Arnold.

United contends that Arnold's younger colleagues are insufficient comparators because they were not similarly situated or substantially younger. Br. at 21–24. United is incorrect on both fronts.

#### 1. A.C. and T.S.

United first argues that A.C. and T.S. were not similarly situated to Arnold because they were members of a different team with different responsibilities. This Court can dispose of this argument, as it is well-established that similarly situated individuals need not be "doppelganger[s]." *Filar v. Bd. of Educ.*, 526 F.3d 1054, 1061 (7th Cir. 2008). They must only be similar "in all material respects." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012); *see also id.* at 852 (warning against "[d]emanding nearly identical comparators" because it would pose "an insurmountable hurdle" for Title VII plaintiffs); *Dunlevy v. Langfelder*, 52 F.4th 349, 354 (7th Cir. 2022) ("[T]he similarly situated inquiry should not devolve into a mechanical, one-to-one mapping between employees."); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), aff'd, 553 U.S. 442 (2008) ("[A]n employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity.")

In this case, there is sufficient evidence for a reasonable jury to conclude that Arnold and the younger employees were similarly situated in all material respects.

The record reflects that Arnold, A.C., and T.S. were all in the same department, reported to the director, handled responsibilities in the same area—internal corporate communications—and were subject to United's organizational guidelines. R.44-1 at 55; R.44-5 at 3. This evidence creates at least a material factual dispute on this issue, precluding summary judgment. *See Coleman*, 667 F.3d at 846 (holding the similarly situated inquiry is "usually a question for the fact-finder").

United also asserts that Arnold failed to submit evidence, aside from her deposition testimony, of the exact ages of the younger employees who replaced Arnold on the Core4 project. *See* United Br. at 23. This Court should reject this argument for two reasons. For starters, Arnold did submit evidence about the employees being younger. Arnold testified "One of my projects was . . . given to someone younger." R.44-1 at 19; *see also* R.47-14 at 3 ("[C]ore4 project was taken away although all deliverables on track and given to younger and lower-level employee[.]"). United cites no authority for its novel proposition that Arnold's testimony is insufficient to raise a dispute precluding summary judgment. Indeed, the Seventh Circuit has held the opposite. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 901 (7th Cir. 2018) (finding that plaintiffs' testimony about their supervisor's use of racially derogatory language were sufficient to create a genuine issue of material fact on hostile work environment claim); *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) (noting that this Court "long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment . . .").

Second, while Arnold's district court counsel should have issued discovery to United about the employees' ages, the lack of this evidence from United is not fatal to Arnold's claim. The *McDonnell Douglas* framework was "never intended . . . to be rigid, mechanized or ritualistic." *Coleman*, 667 F.3d at 846 (citations omitted). Instead, the framework is supposed to give plaintiffs a "boost" when the only evidence of discrimination is a series of suspicious circumstances. *Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640, 643 (7th Cir. 2002). Accordingly, even under the *McDonnell Douglas* framework, the ultimate question at summary judgment is whether a reasonable jury could conclude that the adverse employment action at issue was motivated by impermissible discrimination. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). To properly answer that question, courts must consider the plaintiff's evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Id.* at 765–66 (holding the *McDonnell Douglas* test itself affirms that "all evidence belongs in a single pile.").

## 2. J.P.

United contends J.P., Arnold's co-worker who had the same alleged performance deficiencies as her but was not placed on a PIP, is not a sufficient comparator to Arnold because their six-year difference is "presumptively insubstantial" under Seventh Circuit precedent holding age disparities less than ten years are presumptively insubstantial. *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997). However, United ignores basic principles of black

letter law that presumptions can be overcome. This Court said as much in *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887 (7th Cir. 1997), the case that *Kariotis* relies on, when it held, "[T]he line we draw is not so bright as to exclude cases where the gap is smaller, but evidence nevertheless reveals the employer's decision to be motivated by the plaintiff's age." *Hartley*, 124 F.3d at 893.

Here, Arnold's evidence that United's actions were motivated by her age overcomes the "presumptively insubstantial" standard that would otherwise apply to Arold and J.P.'s six-year age difference. To wit, United asked Arnold about her seniority date, R.44-1 at 34–35, 79, and just three days later, asked Arnold if working at United "is going to work for you long term." *Id*. at 79. United leaders then decided to "focus on [Arnold's] performance" rather than offer her a monetary exit package. R.47-13 at 1. Supervisors criticized Arnold's performance and refused to provide coaching to her when she asked. R.44-1 at 76; R.46 at 12, 29; *see* Opening Br. at 9. A reasonable jury could find this evidence "nevertheless reveal[ed]" United's decision to put Arnold on a PIP was motivated by her age. *Hartley*, 124 F.3d at 893.

United also argues that J.P. is not a sufficient comparator because she performed differently than Arnold. Br. at 22. This argument, too, is belied by the record in this case and well-established law. Arnold and J.P. reported to the same supervisor, were subject to the same standards and guidelines, shared the same role, performed the same and similar tasks, and reflected the same performance deficiencies. R.44-1 at 12, 14, 151; R.44-3 at 6; R. 47-11. Despite these material

similarities, only Arnold was placed on a PIP, while J.P. received a positive performance review. R.44-3 at 6–7, 18; R.52 at ¶¶45–47. This evidence is classic comparator evidence under well-established precedent. *See Dunlevy*, 52 F.4th at 353 (holding employees are similarly situated if they "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them"); *Humphries*, 474 F.3d at 405 ("the [similarly situated] inquiry simply asks whether there are sufficient commonalities on the key variables . . . after all, our intention in establishing the similarly situated requirement was to provide plaintiffs the "boost" the *McDonnell Douglas* framework intended.").

Finally, United admits that J.P. and Arnold had the same performance issues, but disputes that Arnold and J.P. responded similarly. Br. at 21–22. This Court should decline United's invitation to view the record in the light most favorable to them, as that is not the summary-judgment standard. In addition, United's argument further exemplifies that this issue is a material factual dispute that a jury should decide.

### C. A genuine issue of material fact remains whether Arnold was meeting United's legitimate work expectations and whether United's justifications were pretext for age discrimination.

United's contention that Arnold's past performance reviews alone do not indicate her performance at the time of her transfer and placement on the PIP is a red herring, as this legal issue is not disputed. Accordingly, Arnold submitted

evidence besides her prior performance reviews from which a reasonable jury could find that she was meeting United's legitimate work expectations: *inter alia*, Arnold had been praised for her work in her prior role, and colleagues were perplexed by her sudden removal from Core4. *See* Opening Br. at 7 (citing R.44-1 at 34; R.1-1 at 9; R.46 at 31). Arnold also provided evidence that her 2019 year-end review—her first negative review in twenty-five years at United—was part of her supervisors' plan to "focus on performance" instead of offering her a separation package. R.47-13 at 1; *see also* Opening Br. at 8–9.

United also argues that Arnold was a subpar employee who received negative performance assessments before and after her transfer. Br. at 25. In addition to demonstrating that this is a material factual dispute for the jury to decide, United's argument also misstates the record evidence. Before her transfer, Arnold's performance ratings were all positive. R.44-1 at 107, 120; *see generally* R.47-15. This Court should reject United's assertion that any critiques in Arnold's prior evaluations meant those evaluations were negative. *See* Br. at 25. Given United's own admission that employees who receive negative ratings are placed on a PIP, Br. at 10, 22, the fact that Arnold was not put on a PIP until several months after her transfer indicates that she was receiving positive ratings—that is, meeting United's legitimate work expectations at the time of her transfer. R.44-1 at 20–21; R.44-3 at 7.

Additionally, a reasonable jury could find that Arnold met work expectations before and after placement on the PIP. The record viewed in the light most

favorable to Arnold shows that Arnold's supervisor, Schall, wanted the broader corporate communications team to recognize her hard work. R.44-1 at 82. In Arnold's 2019 year-end review, Schall also wrote that "[h]er business partners like her and rely on her because of her willingness to help and her clear desire to provide good service." *Id*. at 132. In addition, even after United placed Arnold on a PIP, she still received praise from business partners for her work product. *Id*. at 38; R.47-28.

Finally, Arnold also provided evidence from which a reasonable jury could find that United's non-discriminatory rationales were pretext for age discrimination. Arnold's facts were the following: When Arnold complained of sitting next to the supervisor she reported for sexual harassment, United asked Arnold about her seniority. R.44-1 at 34–35, 79. Weeks later, after Arnold escalated her seating request to a deputy general counsel, United decided to "focus on [Arnold's] performance" rather than offer Arnold a separation package. *See generally* R.47-13. When Arnold requested performance coaching, United provided none. R.44-1 at 36, 76; R.46 at 12, 29; Opening Br. at 9. A short time later, Arnold received her first ever negative review in twenty-five years at United. R.1-1 at 7; R.44-1 at 131; R.47-15; R.52 at ¶22; Opening Br. at 9. A reasonable jury could find that this sudden negative evaluation could support an inference of discrimination. *See*, e.g., *Ferrell v. Leake & Watts Servs., Inc.*, 83 F. App'x 342, 347 (2d. Cir. 2003) (finding that plaintiff's negative review in her thirty-year career could help support an inference that she was fired because of her age).

United claims that Arnold "overblows the significance" of the email exchanges between United leaders deciding to use Arnold's performance to push her out of the company. Br. at 28; *see generally* R.47-13. They argue that their focus on Arnold's performance was "routine performance management," and point to the deposition testimony of a United HR that avoiding email discussions is part of the company's "best practices." Br. at 29. However, this is another example of United asking this Court to view the record according to their account of events, not Arnold's. A reasonable jury could credit this evidence of United's decision to use Arnold's performance so she would leave the company—along with Arnold's positive performance ratings—to find that Arnold was meeting United's legitimate work expectations at the relevant times, and that United invented performance issues out of whole cloth to cover up its intent to terminate an older employee. Consequently, summary judgment should not have been granted on Arnold's age discrimination claim.

## II. The district court should not have granted summary judgment on Arnold's retaliation claim.

### A. Arnold's sex-based protected activities are a valid basis for her retaliation claim under the Illinois Human Rights Act.

United argues that Arnold's retaliation claim cannot include sex-based protected activities because her complaint alleged retaliation based only on age. According to United, in the complaint's allegation of "age discrimination and retaliation," 'age' modifies both 'discrimination' and 'retaliation.' United Br. at 30–

31. Accepting United's reading is improper at the summary judgment stage and, in any event, is not even close to being supported in the record.

Arnold's pleadings in the district court are replete with allegations of retaliation based on sex. In the complaint, Arnold alleges that she filed an internal complaint of sexual harassment against her former supervisor, had to lateral to a different position to avoid that supervisor, and, in her post-transfer role, was mistreated by her superiors "based on age *and* in retaliation for participating in a protected activity." R.1-1 at ¶¶16–18, 23 (emphasis added). This Court should grant Arnold the reasonable inference that the protected activity she refers to in this allegation is the sex-based protected discussed in the preceding paragraphs. *See id.* at ¶¶16–18. That United disputes this fact exemplifies this is an issue for the jury to decide.

Arnold also argued at the summary-judgment stage that her retaliation claim was premised on protected activities related to both age and sex. R.45 at 9 (stating that Arnold's retaliation claim is based on, *inter alia*, reporting sexual harassment and lodging internal complaints about being forced to sit near her accused harasser). Even United admits in their appellate brief that Arnold's retaliation claim is based, in part, on a sex-based protected activity. *See* Br. at 32 ("Arnold testified that her retaliation claim is premised on two internal complaints—her 2017 age discrimination complaint *and her 2018 sexual harassment complaint"*) (emphasis added). Based on the record evidence, United's argument is a non-starter this Court should disregard.

**B. A reasonable jury could find that Arnold's negative review and placement on a PIP are materially adverse harms causally linked to Arnold's protected activities.**

United asserts that the threat of termination inherent to a PIP and the scrutiny and unrealistic deadlines imposed on Arnold are not "materially adverse" employment actions under *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006). However, the bar for "materially adverse" is not so high. To demonstrate materially adverse harm in the retaliation context, a plaintiff need only show that the employment action in question "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68.

There is sufficient evidence in the record from which a reasonable jury could find that United's actions were "materially adverse." A few months after making internal complaints about the Core4 project being reassigned to younger employees and her seating arrangement near her accused harasser, Arnold was given a negative review and placed on a PIP, both of which were unprecedented in her twenty-five years at United. R.44-1 at 20–21, 131. It is for the jury to decide whether the suspicious nature of this sequence of events, as well as the immense burdens Arnold's PIP imposed, would have dissuaded her from complaining about discrimination in the first place.

Regarding causation, United, like the district court, focuses solely on Arnold's report of age discrimination in 2017, arguing that it is too attenuated from the harms she faced in 2019 and 2020. However, Arnold not only engaged in other relevant protected activities, as described above, but also established a causal link

16

between these protected activities and her materially adverse workplace harms.

Arnold provided circumstantial evidence of suspicious timing, similarly situated

employees being treated differently, and pretext. *See* Opening Br. at 32–33. For

example, Arnold received her first negative review and placement on a PIP just a

few months after she complained of age and sex discrimination, a time period that

this Court has recognized as sufficient to support the causal nexus in a retaliation

claim. *See Coleman*, 667 F.3d at 861. Arnold also provided evidence that J.P., a

similarly situated employee with similar alleged performance deficiencies, was

given a positive performance review and not placed on a PIP. R.44-3 at 6–7, 18; R.52

at ¶¶45–47. Additionally, Arnold provided evidence from a which a jury could find

United's adverse actions were pretextual. *See supra* at 13–14, 17. This Court has

routinely held these kinds of evidence show causation. *See Coleman*, 667 F.3d at

860. Accordingly, this Court should reverse the grant of summary judgment on

Arnold's retaliation claim.

**III.    The district court erred when it granted summary judgment on Arnold's hostile work environment claim.**

**A. Arnold properly raised a hostile work environment claim based on her protected status as a sexual harassment claimant.**

United's contention that Arnold waived her sexual harassment-based hostile

work environment claim by not raising it with the district court is without support

in the record. In Arnold's pleading in the district court, she asserted she faced a

hostile work environment because she reported sexual harassment. *See* R.1-1 at

¶¶16, 17, 18, 23, 26, 43–45. In addition, as discussed above, Arnold alleged she had

been harassed at work based on both her "age and in retaliation for participating

17

in" the protected activity of reporting sexual harassment. R.1-1 at ¶23. This Court should grant Arnold the reasonable inference that if she was only alleging age-based claims, including both age and another protected activity would have been redundant, demonstrating that she also raised a hostile work environment claim based on more than age. *See U.S. v. Misc. Firearms, Explosives, Destructive Devices and Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) (holding the Court's plain reading approach requires not interpreting in a way that creates redundant phrases). Finally, Arnold argued at the summary-judgment stage that she engaged in protected activities based on sexual harassment. *See* R.45 at 9 ("Arnold engaged in several instances of protected activity when she . . . reported a Stephen Jones for sexual harassment . . . when she complain[ed] about being assigned to sit near Stephen Jones in September 2019"). There can be no serious dispute that Arnold's sex-based claim of a hostile work environment was not raised in the district court.

### B. United created a pervasively offensive work environment.

United asserts that forcing Arnold to sit near her supervisor, whom she reported for sexual harassment, was not offensive because they eventually offered her alternative seating. Br. at 40–41. This assertion minimizes the harassment United inflicted upon Arnold and discredits ample evidence from which a jury could find that her work environment was pervasively offensive.

The record viewed in the light most favorable to Arnold shows that United forced her to move floors to sit near Jones, R.44-1 at 35, 79, and she found this seating assignment abusive, humiliating, and harmful to her productivity, R.47-14 at 3–4. In addition, United omits in their response brief that they rejected Arnold's

18

initial request to change the seating arrangement and instead told her she could resign if sitting close to her abuser was too uncomfortable and that she should think about her long-term future at the company. R.44-1 at 34–35, 79. United also ignores Arnold's seating request change was granted only after she was forced to escalate the issue to the company's deputy general counsel. R.47-13 at 3; R.52 at ¶ 23. And United fails to mention that when United executives finally agreed to let Arnold move seats, they also decided to use her performance to get her to exit the company. R.47-13 at 1. In sum, the fact that United ultimately granted her request to change seats is of no consequence, and it cannot establish, as a matter of law, that Arnold did not face a pervasively hostile work environment.

United also relies on the holding of *Hambrick v. Kijakazi,* 79 F.4th 835, 843 (7th Cir. 2023) that heavy workload, management's high expectations, and routine workplace discipline were not enough to prove the work environment in that case was hostile. Arnold's evidence is factually distinguishable from *Hambrick*'s and, at any rate, does not establish that Arnold's workplace was not hostile as a matter of law. Unlike the plaintiff in *Hambrick*, Arnold, among other things, faced public humiliation and undue blame, R.44-1 at 38, and suffered severe mental stress and pressure, R.44-3 at 15, to the point that she needed therapy and cried often due to the demanding workload, R.44-1 at 44; R.47-14 at 4. Based on this evidence, a reasonable jury could find that Arnold faced a pervasively offensive workplace, and *Hambrick* does not suggest otherwise. Accordingly, the district court

should not have granted summary judgment on Arnold's hostile work environment claim.

## IV.   Dismissal of Arnold's constructive discharge claim was in error because the claim was exhausted, and termination was inevitable.

### A.  This Court should consider Arnold's administrative exhaustion argument.

While the district court found that Arnold waived her constructive discharge claim by not responding to United's argument that she failed to exhaust, this Court can and should still consider her argument because it would advance interests broader than just those of the parties in several ways.

First, considering Arnold's argument would uphold the Court's interest in ensuring candor from officers of the court so that it may address issues on the merits. To further this goal, this Court has held that attorneys cannot "defeat an opposing party's claims by misleading the court, whether by a misrepresentation or by a pregnant omission." *In re Lightfoot*, 217 F.3d 914, 917 (7th Cir. 2000).

Here, United knew or should have known that Arnold brought her resignation to the IDHR's attention during the investigation process. On March 19, 2021, United received a notice of dismissal from IDHR, which provided that Arnold told the agency that she had involuntarily retired. S.A. 00033–34. Nevertheless, United argued in its pleadings at the summary-judgment stage that Arnold failed to inform the IDHR of her resignation despite having the document showing the opposite in their possession. *See* R.43 at 14; R.53 at 14.

Moreover, the district court relied on United's incorrect assertion when it dismissed Arnold's constructive discharge claim based on failure to exhaust. *See*

R.57 at 28–29. It would be unfair for United to benefit from their incorrect assertion in the proceedings below when they are not prejudiced by the Court considering Arnold's argument. *Smith v. Rowe*, 761 F.2d 360, 365 (7th Cir. 1985) (holding that a party suffers no prejudice from the late disclosure of documents if they knew about them).

Second, the Court's consideration of Arnold's argument would serve its stated interest in encouraging plaintiffs to seek administrative appeals. *See*, *e.g.*, *Robbins v. Bentsen*, 41 F.3d 1195, 1199 (7th Cir. 1994) (in administrative exhaustion case, declining to rule in a way that would discourage plaintiffs from making administrative appeals).

Third, considering Arnold's argument would further the goals administrative exhaustion was designed to achieve. Plaintiffs must administratively exhaust their claims to allow the agency to investigate and decide whether to sue. *Doe v. Oberweis Dairy,* 456 F.3d 704, 708 (7th Cir. 2006). Arnold's administrative complaint against United allowed the Illinois Department of Human Rights (IDHR) to investigate and sue United for constructive discharge. The agency had that opportunity in May 2020, when Arnold filed the complaint, R.44-1 at 169–175, and had another opportunity in July 2020, when Arnold notified the agency that she had involuntarily retired in a complaint questionnaire. S.A. 00037–38. Holding Arnold waived her claims when the goals of administrative exhaustion were met could have the unintended consequence of suggesting to plaintiffs that even when they meet

complex exhaustion requirements, their claims could still be dismissed on a procedural basis.

United also asserts that this Court cannot judicially notice the agency documents showing that Arnold notified the IDHR of her resignation because they were not submitted to the district court at the summary-judgment stage. United does not cite any case law for their novel proposition that appellate courts cannot judicially notice documents in the proceedings before them. Indeed, this Court routinely takes judicial notice of agency determinations. *See Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996). Therefore, this Court can and should take judicial notice of these documents from the IDHR.

### B. Arnold properly exhausted her constructive discharge claim.

On the merits, United challenges the content of Arnold's notification to the IDHR of her resignation. They argue the IDHR notice of dismissal and complaint questionnaire do not serve to exhaust the constructive discharge claim properly. This argument is easily disposed of because it is premised on viewing the documents at issue and granting reasonable inferences in the light most favorable to United, not Arnold. It also demonstrates that the parties hotly dispute this factual issue, precluding summary judgment.

United's argument is also, again, belied by the record. United points to a part in the complaint questionnaire where Arnold wrote that she was quitting because of additional cuts due to COVID-19 and her performance. *See* Br. at 45. However, in the same questionnaire, Arnold also wrote that she "involuntarily retired" because

22

she had been "constantly harassed and experienced retaliatory actions after opposing discrimination, harassment, and retaliation after filing internal complaints." S.A. 00037.

In any event, Arnold, who filed documents with the IDHR without the assistance of a lawyer, was not required to list the legal definition of constructive discharge in her notification to the IDHR. *See Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (holding administrative charges should be read liberally because they are often filed without the assistance of a lawyer). This Court can and should grant Arnold the reasonable inference that her assertion she had "involuntarily retired" due to harassment and retaliatory actions served to notify the agency she was constructively discharged.

United also argues that Arnold's constructive discharge claim could not have reasonably been expected to grow out of her age discrimination, retaliation, and hostile work environment claims. Br. at 45–46. In addition to this argument raising an additional factual dispute precluding summary judgment, there is sufficient evidence for a reasonable jury to find that Arnold's answer to the complaint questionnaire that she "claimed involuntary retirement as I had been constantly harassed and experienced retaliatory actions after opposing discrimination, harassment[,] and retaliation after filing internal complaints" served to notify the IDHR that the hostile actions described in her other claims had caused, or, at the very least, were related to, her ultimate retirement. S.A. 00037.

### C. A reasonable jury could find that Arnold's working conditions were intolerable and her departure inevitable.

United's final argument contends that even if the complaint questionnaire proves that Arnold administratively exhausted her claim, her working conditions do not show that she was constructively discharged. United disputes whether Arnold's working conditions were intolerable. This dispute alone precludes a grant of summary judgment. In addition, there is ample evidence from which a reasonable jury could find Arnold faced a concerted harassment campaign that any reasonable employee would have found intolerable, and her termination was a foregone conclusion. This evidence includes Arnold's placement on an onerous PIP, being publicly humiliated, being notified that she failed the PIP, her understanding that failing the PIP would result in termination, and the repeated rescheduling of a final meeting to discuss the results of her PIP. *See* R.44-1 at 31, 38, 153; R.44-3 at 15; R.47-14 at 4; R.47-26 at 1–6.

United also asserts that Arnold's termination was not inevitable based on the facts of *E.E.O.C. v. Univ. of Chicago Hosps.*, 276 F.3d 326, 332–33 (7th Cir. 2002) (holding the plaintiff's departure was inevitable because their workplace had packed up their belongings). However, this Court did not hold that a workplace must pack up the employee's belongings to prove the inevitability of termination. The Court articulated many other examples of facts from which a jury could conclude an employee "could be reasonably sure they were about to be fired," including "significant changes in an employee's evaluations, repeated accusations of failure to follow directives," and hostility. *Id.* at 332. Here, Arnold received a negative evaluation after twenty-five years of positive evaluations, was told she

failed the PIP, and faced a pervasively hostile environment, as explained above and in Arnold's opening brief. *See supra* at 17–20; Opening Br. at 5, 9, 33–35. Because a reasonable jury could find from these facts that Arnold reasonably believed her termination was inevitable, summary judgment should not have been granted on Arnold's constructive discharge claim.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's grant of summary judgment on Arnold's age discrimination, retaliation, hostile work environment, and constructive discharge claims.


Respectfully submitted,

/s/ Danielle Hamilton

Danielle Hamilton
Kana Turley*
Jacob Allen*
Anirudh Koka*
Northwestern University Pritzker School of Law
Carter G. Phillips Center for Supreme Court & Appellate Advocacy
(312) 503-1486
375 E. Chicago Avenue, 8th Floor Chicago, IL 60611
danielle.hamilton@law.northwestern.edu

*Law student appearing pursuant to Illinois Supreme Court Rule 711
*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

1. This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because: this brief contains 6,287 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in 12-point Century-Schoolbook Font.

Respectfully submitted,

/s/ Danielle Hamilton

## CERTIFICATE OF SERVICE

I, Danielle Hamilton, an attorney, certify that, on March 12, 2025, a copy of Plaintiff-Appellant's opening brief and short record were filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to be served have been served.

/s/ Danielle Hamilton